# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

_____ )
HULLEY ENTERPRISES LTD., YUKOS )
UNIVERSAL LTD., AND VETERAN )
PETROLEUM LTD., )
 )
                     *Petitioners*, )
 )
                   v. )    Case No. 1:14-cv-01996-BAH
 )
THE RUSSIAN FEDERATION, )
 )
                     *Respondent*. )
_____ )

## **THIRD STATUS REPORT**

Pursuant to this Court's Order dated September 30, 2016, the Russian Federation advises herein on the status of Petitioners' appeal before the Court of Appeal of The Hague, as well as certain related proceedings.

Despite their attempts to reach agreement, the Parties were unable to agree as to the substance of a joint status report. The Parties are therefore submitting separate Status Reports to the Court, as they did previously on March 30, 2017, and September 29, 2017 (ECF Nos. 155, 156, 158, 159).

The Russian Federation's Status Report is as follows:

1. Since the proceedings before the Court of Appeal of The Hague first began on July 18, 2016, Petitioners have repeatedly taken steps to delay those proceedings. At each opportunity, Petitioners have made extensive efforts to avoid addressing the consequences of their illegal activities under Articles 1(6) and 1(7) of the Energy Charter Treaty ("ECT"). These are the provisions of the ECT defining the class of allegedly genuine "investors" who made a protected "investment," who purportedly received an offer to arbitrate under the ECT. As

explained in the Russian Federation's pleadings before the Court of Appeal of The Hague, the Paris Court of Appeal, and this Court, Petitioners' acts of bribery, fraud, bid-rigging, and tax evasion disqualified them from accepting any purported offer to arbitrate based on the veil-piercing doctrine and other fundamental principles of international law.[1]

2. As detailed below, Petitioners have once again[2] employed a variety of tactics which will protract the Dutch proceedings, while seeking to divert the attention of the Court of Appeal of The Hague away from these critical factual and legal issues—just as Petitioners previously did before this Court in 2016.

3. Since the last Status Report, the parties' submissions in The Hague have continued pursuant to the Court of Appeal's briefing schedule.[3] After Petitioners filed a Statement of Appeal on March 14, 2017, the Russian Federation filed a Statement of Defense on November 28, 2017. Unexpectedly, by letters dated December 5 and 18, 2017, Petitioners then raised an entirely new objection under Article 130 of the Dutch Code of Civil Procedure ("DCCP"), which governs the amendment of claims. According to Petitioners' new objection, it would allegedly violate the requirements of due process for the Court of Appeal to consider the consequences of Petitioners' illegal activities.

---

[1] *See, e.g.*, Resp.'s Supp. Mot. to Dismiss 23-38 (ECF-No. 142-2).

[2] As described in the Russian Federation's First Status Report (ECF No. 156), Petitioners initially filed a request to bifurcate the pleadings in the Dutch appellate litigation on August 11, 2016. In that request, Petitioners asked the Court of Appeal to dedicate a first round of briefing and a hearing to a single issue—*i.e.*, whether the Russian Federation ever offered to arbitrate with Petitioners in light of Article 45(1) of the ECT. Then, during a procedural hearing on January 16, 2017, Petitioners suddenly abandoned their original bifurcation proposal and replaced it with an entirely different one—*i.e.*, a proposal to litigate the majority (all but one) of the substantive issues in a first round of pleadings, followed by a second round dedicated to discussing exclusively the consequences of Petitioners' illegal activities under Articles 1(6) and 1(7) of the ECT. On January 23, 2017, the Court of Appeal rejected both of Petitioners' unorthodox requests for bifurcation. *See* Resp.'s First Status Report ¶ 5 (ECF No. 156).

[3] *See* Resp.'s First Status Report ¶ 5 (ECF No. 156).

4. Petitioners' new argument will protract the Dutch proceeding and again is an attempt by Petitioners to avoid discussing the evidence of Petitioners' wrongdoing. Indeed, Petitioners have now had multiple opportunities to consider and respond to the Russian Federation's evidence relating to Petitioners' illegal activities—including before the District Court of The Hague, the Paris Court of Appeal, the Higher Regional Court of Berlin, and this Court. The suggestion that responding to this evidence would somehow violate Petitioners' rights to due process is entirely without foundation.

5. In any event, after the Parties exchanged several more rounds of correspondence relating to Petitioners' latest objection under the DCCP's Article 130, the Court of Appeal of The Hague established a new briefing schedule on January 17, 2018. In accordance with this schedule, Petitioners submitted a brief addressing their "due process" objection on February 13, 2018. The Russian Federation will submit its response on April 24, 2018. A tentative date for an oral hearing on Petitioners' objection has been set for June 18 or 19, 2018. It is unknown when the Court of Appeal will render an interim judgment with respect to Petitioners' new objection.

6. Meanwhile, as previously reported, Petitioners have also engaged in extensive parallel litigation in the U.S. District Courts and in courts throughout Europe. Virtually all of that litigation has now been terminated.

7. Specifically, Petitioners filed an application before this Court seeking discovery from Baker Botts LLP and one of its partners under 28 U.S.C. § 1782. This Court initially denied that application on August 18, 2017, and subsequently denied Petitioners' Motion for

Reconsideration on December 9, 2017.[4]  Petitioners also filed a parallel application in the U.S. District Court for the Central District of California, seeking discovery from an Armenian lawyer. This application was granted on an *ex parte* basis by a U.S. Magistrate Judge. Petitioners failed to effect service of the subpoena, however, and subsequently filed a Motion to Serve a Subpoena by Alternative Means. The U.S. Magistrate Judge denied this Motion, and the U.S. District Court upheld that denial on October 23, 2017.[5]  Accordingly, both of the proceedings initiated by Petitioners under 28 U.S.C. § 1782 have now been closed.

8. Similarly, all of Petitioners' recognition ("exequatur") and enforcement actions in France and Belgium have now essentially come to an end.

9. As explained in the Russian Federation's Second Status Report (ECF No. 159), the Paris Court of Appeal issued an order dated June 27, 2017, which sua sponte directed the Parties to submit their views on the possibility of referring several questions of European Union ("EU") law presented by the case to the European Court of Justice ("ECJ"). Rather than allowing the ECJ to address these issues, Petitioners definitively renounced the exequatur proceedings in France altogether on October 10, 2017. By taking this step, Petitioners effectively prevented the French court from referring the questions of treaty interpretation arising in this case to the ECJ.

10. Shortly thereafter, on November 2, 2017, Petitioners also definitively renounced the exequatur and attachment proceedings in Belgium. By doing so, Petitioners prevented the

---

[4] Memorandum Order and Opinion (ECF No. 20), *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 1:17-MC-1466 (D.D.C.).

[5] Order to Show Cause (ECF No. 20), *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 2:17-CV-07100 (C.D. Cal.).

Brussels Court of Appeal from addressing the absence of any offer to arbitrate under the ECT, or any of the Russian Federation's other defenses in this case.

11. Notably, in a series of orders dated December 12, 2017, the Paris Court of Appeal awarded EUR 600,000.00 to the Russian Federation as partial compensation for legal costs incurred during the French litigation. Similarly, by orders dated February 20, 2018, the Brussels Court of Appeal awarded a net amount of EUR 28,248.69 to the Russian Federation as partial compensation for legal costs incurred during the Belgian litigation.

12. Pursuant to this Court's Order dated September 30, 2016, the Parties will submit the Fourth Status Report by September 30, 2018.

Dated: March 30, 2018

Respectfully submitted,

*/s/ Carolyn B. Lamm*_____
Carolyn B. Lamm (D.C. Bar No. 221325)
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com

*Counsel for the Russian Federation*