# Exhibit A

*Unofficial Translation*

# Ruling

**COURT OF APPEAL IN THE HAGUE**

Civil Law Division

Case number: 200.197.079/01

Case/cause list number: C/09/477160/HA ZA 15-1; C/09/477162/HA ZA 15-2 and C/09/481619/HAZA 15-112

**ruling dated 25 September 2018**

in the matter of

1.  the legal entity incorporated under the laws of Cyprus **VETERAN PETROLEUM LIMITED,** with its official seat in Nicosia, Cyprus,
    hereinafter referred to as: VPL,

2.  the legal entity incorporated under the laws of the Isle of Man **YUKOS UNIVERSAL LIMITED**;
    with its official seat in Douglas, Isle of Man, hereinafter:
    YUL,

3.  the legal entity incorporated under the laws of Cyprus **HULLEY ENTERPRISES LIMITED,** with its official seat in Nicosia, Cyprus,
    hereinafter referred to as: Hulley,

appellants,
hereinafter also jointly referred to as HVY (in the plural),
counsel: M.A. Leijten practising in Amsterdam,

versus

**THE RUSSIAN FEDERATION,**
with its official seat in Moscow, Russian Federation,
hereinafter referred to as "the Russian Federation",
respondent,
counsel: J.A. Dullaart practising in The Hague,


1.  **The proceedings**

1.1    For the course of the proceedings until the interim judgment of 11 October 2016, the Court of Appeal refers to that ruling. The personal appearance of the parties ordered through that ruling took place on 16 January 2017. The report of said hearing is part of the case file. Following the discussion that took place during this hearing, the Court of Appeal informed the parties as follows by letter dated 23 January 2017:
    "Since the Russian Federation opposes a total or partial division of the appeal proceedings, the usual proceedings of one Statement of Appeal

*Unofficial Translation*

> and one Defence on Appeal will be followed. The fact that the Russian Federation submitted a large number of exhibits to the District Court at a late stage does not constitute a reason for the Court of Appeal for the time being to deviate from the normal conduct of proceedings, also in view of the explanation given in this respect by Mr Van den Berg during the personal appearance of the parties.
>
> This does not detract from the fact that the Court of Appeal considers it its duty to ensure that the principle of hearing both sides of the argument is fully respected at all times. This will mean, among other things that, after submission of the Defence on Appeal, the Court of Appeal will verify on the basis of the content of that Defence on Appeal and after the parties have been given the opportunity to express their opinion on it, whether due process entails that HVY must be given the opportunity to, apart from a response to any exhibits submitted with the defence on appeal, respond to the content of this defence on appeal in another written statement."

1.2     HVY submitted the Statement of Appeal with exhibits on 14 March 2017. The Russian Federation submitted the Defence on Appeal with exhibits on 28 November 2017. By letter dated 18 December 2017, HVY wrote that the Defence on Appeal contains changes of claim that HVY wishes to object to. The Russian Federation replied to this by letter dated 12 January 2018. In a letter dated 17 January 2018, the Court of Appeal informed the parties as follows:

> "1.     The Court of Appeal sees no reason in advance to deny HVY the right to submit a document containing an objection to the (alleged) increase of (the basis of the) claim as referred to in Article 130(1) DCCP. HVY will be given the opportunity to do so.
>
> 2.     The question whether, as HVY argue, the grounds for setting aside advanced by the Russian Federation must be left out of consideration because they were not advanced in the summons is so closely related to the assessment of the objection to the (alleged) increase of (the basis of the) claim, that it is difficult to decide on both subjects separately from each other. HVY will therefore be given the opportunity to explain their position regarding the grounds for setting aside in the document referred to under 1.
>
> 3.     The Court of Appeal sees no reason to decide on the subject referred to in Mr Van den Berg's letter dated 12 January 2018 in footnote 10 at this stage of the proceedings. This is too far removed from the objection to the increase of (the basis of the) claim."

1.3     HVY subsequently instituted these motion proceedings by submitting a "Document containing an objection to the changes of claim pursuant to Article 130 DCCP, 1064(5) DCCP, 1052(2) in conjunction with article 1065(2) DCCP and 1068 DCCP' (hereinafter "the Document Containing an Objection"). On 24 April 2018, the Russian Federation submitted a "Reply regarding HVY's objection to the (alleged) changes of claim" (hereinafter "the Reply").

1.4     On 19 June 2018, the parties had their mutual positions with regard to HVY's objection pleaded before this Court of Appeal, HVY by Leijten, mentioned above, and the Russian Federation by Professor A.J. van den Berg, each on the basis of the written pleadings submitted to the Court of Appeal. A report has been drawn up that is part of the procedural documents. Finally, the parties requested a ruling in the motion proceedings.

## 2.     Introduction and background

2.1     In summary, and insofar as relevant at this stage of the proceedings, this case involves the following.

2.2     HVY are, or were, shareholders in Yukos Oil Company (hereinafter "Yukos"). In 2004, they instituted arbitration proceedings against the Russian Federation on the basis of Article 26 of the Energy Charter Treaty (Treaty Series 1995, 108, hereinafter "ECT"), arguing that the Russian Federation expropriated their investments in Yukos and failed to protect these investments. HVY claimed that the Russian Federation be ordered to pay damages. The location of the arbitration proceedings was The Hague.

*Unofficial Translation*

2.3     In three separate Interim Awards on Jurisdiction and Admissibility of 30 November 2009 (hereinafter "the Interim Awards), the Tribunal ruled on a number of preliminary defences raised by the Russian Federation, including in relation to the Tribunal's jurisdiction. In the Interim Awards, the Tribunal rejected several arguments on jurisdiction and admissibility and decided with regard to other preliminary defences that the opinion in this respect would be stayed until the merits phase of the proceedings.

2.4     In three separate Final Awards of 18 July 2014 (hereinafter "the Final Awards") the Tribunal rejected the remaining arguments on jurisdiction and/or admissibility advanced by the Russian Federation, ruled that the Russian Federation violated its obligations under Article 13(1) ECT and ordered the Russian Federation to pay HVY damages in the amount of USD 8,203,032,751 (to VPL), USD 1,846,000,687 (to YUL) and USD 39,971,834,360 (to Hulley), plus interest and costs.

2.5     In separate summons of 10 November 2014, the Russian Federation summoned Hulley, VPL and YUL to appear before the District Court of The Hague and claimed that the District Court set aside the Interim Awards and Final Award which the Tribunal made in each of their cases. On the application of the Russian Federation, these three cases were joined by the District Court.

2.6     On 20 April 2016, the District Court set aside the Interim Awards and the Final Award in a single judgment that was rendered in the three joined cases due to a lack of a valid arbitration agreement. HVY lodged an appeal against this judgment.

2.7     Arbitration Law was revised in the Act of 2 June 2014, amending Book 3, Book 6 and Book 10 of the DCC and Book 4 of the DCCP with regard to the modernisation of Arbitration Law (Bulletin of Acts and Decrees 2014, 200), which came into force on 1 January 2015 (See Bulletin of Acts and Decrees 2014, 254). Pursuant to Article IV paragraph 4 in conjunction with paragraph 2 of this Act, these proceedings remain subject to the Fourth Book of the DCCP as was the case before the date the Act entered into effect. If this ruling refers to the provisions regarding the setting aside or revocation of arbitral awards, it concerns Articles from Book IV of the DCCP in the version that applied until 1 January 2015.

2.8     Even though the Tribunal made three separate Interim Awards and three separate Final Awards in three separate arbitrations in the cases Hulley, VPL and YUL, these awards do not substantially differ insofar as it concerns the subjects that are at hand in these setting aside proceedings. For that reason, below the Court of Appeal will refer to 'the' arbitration, 'the' Interim Award and 'the' Final Award. As the numbering of the paragraphs in the Interim Awards differs, the Court of Appeal will refer to the numbering of the Interim Awards in the matter of Hulley. The Interim Awards and the Final Award will jointly be referred to as the "Yukos Awards".

**3.     Assessment of the objection of HVY**

3.1     In these motion proceedings, HVY formulated objections to a number of assertions put forward by the Russian Federation in the Defence on Appeal. HVY's objections are directed against assertions relating to the following subjects:

(I)     unclean hands;

(II)    deceit committed by HVY in the arbitration;

(III)   Article 1(6) and (7) of the ECT and the question of whether HVY's shares in Yukos can be construed as an "Investment" within the meaning of the sixth paragraph and whether HVY can be construed as "Investor" within the meaning of the seventh paragraph.

In the assessment of HVY's objections, the Court of Appeal will maintain this classification.

3.2     The Russian Federation takes the position that in these motion proceedings the Court of Appeal should not

*Unofficial Translation*

decide on HVY's assertions which, in short, entail (i) that fraud committed in the arbitration does not constitute a ground for setting aside pursuant to article 1065(1) DCCP but can only be addressed by means of a claim for revocation on the basis of Article 1068 DCCP (ii), that certain statements were not put forward by the Russian Federation in the arbitration so that Article 1052(2) and Article 1065(2) DCCP prevent that the Russian Federation can still raise these statements in these setting aside proceedings and (iii) that the Russian Federation has waived its right to claim setting aside on the basis of the unclean hands argument, or at least that it has forfeited this right. According to the Russian Federation, the Court of Appeal only argued in its letter dated 17 January 2018 that it will decide on the question whether certain

grounds for setting aside put forward by the Russian Federation must be left out of consideration because they were not raised in the summons.

3.3     This position of the Russian Federation is rejected. First of all, it is not up to the Court of Appeal to prescribe to HVY what can and cannot be addressed in motion proceedings such as these. HVY (like every party to the proceedings) is free to raise a motion at any stage of the proceedings unless this is in breach of the law of due process of law or if it constitutes abuse of law. Furthermore, the Russian Federation starts from too limited an interpretation of the Court of Appeal's letter dated 17 January 2017. The background of the Court of Appeal's decision to - prior to the substantive hearing - not only to want to decide on HVY's objection on the basis of Article 30 DCCP, but also on HVY's objections that are derived from arbitration law, is that both these categories of objection are closely related so that it is difficult to decide on them separately from each other. The background was furthermore that clarity would be provided about the question which assertions would and which would not be part of the substantive arguments between the parties. This applies not only to HVY's objection that the Russian Federation - in breach of Article 1064(5) DCCP - did not advance all grounds for setting aside in the summons, but also to HVY's reliance on Article 1068 and Article 1052(2) and Article 1065(2) DCCP and the reliance on a waiver of rights/forfeiture of rights regarding the unclean hands argument. In all cases in which HVY lodged an objection on the basis of Article 1068 and Article 1052(2) and Article 1065(2) DCCP, they have also relied on Article 130 DCCP. It would not be very useful at this stage to decide, with regard to, for example, the unclean hands argument, on the basis of the objection based on Article 130 DCCP, but not insofar as it is based on Article 1052(2), Article 1062(2) DCCP or a waiver of rights or forfeiture of rights. In that case, the parties would not yet know where they stand with regard to the admissibility of the unclean hands argument.
It should have been clear to the Russian Federation, too, that the Court of Appeal's intention was to provide clarity as early as at this stage of the proceedings about what would and what would not be part of the arguments between the parties.

3.4     The Russian Federation argued that, during the personal appearance of parties on 16 January 2017, HVY waived the right to object to the unclean hands argument. To the question of the Court of Appeal whether parties still intended to raise motion proceedings, Mr Ynzonides, one of HVY's lawyers at the time, answered:

> 'We briefly considered submitting the matter on whether the unclean hands argument could in fact be addressed in these proceedings to this Court of Appeal separately, but decided not to do so.'

However, this statement does not entail a waiver of rights and the Russian Federation could not reasonably have deduce this from this either. This statement, which was apparently made in view of the state of affairs at the time, does not demonstrate that HVY waived its right to raise motion proceedings about this subject in the future. It appears that HVY, in response to the positions adopted by the Russian Federation in the Defence on Appeal, saw cause to raise motion proceedings. It should be noted that it is not clear what interest the Russian Federation has in this argument. It does not argue that HVY also waived its right to take the position in the procedural documents that the unclean hands argument cannot be addressed anymore. Incidentally, the Court of Appeal considers it important in connection with due process of law that a decision is currently rendered on this question.

**4.     (1) unclean hands**

<u>the assertions regarding unclear hands to which HVY object</u>

*Unofficial Translation*

4.1     The assertions to which HVY object under the heading unclean hands essentially entail that HVY, or at least the (legal) persons whose actions can be attributed to HVY, themselves acted unlawfully, in particular when making and consolidating their investments in Yukos. As the Court of Appeal understands it, HVY is concerned with the following assertions in the Defence on Appeal (please see the chapter division in the Defence on Appeal):

4.1.1    Defence on Appeal III under B

In the Defence on Appeal further referred to as: *Part III (Backgrounds: the unlawful acquisition, operation and plundering of Yukos Oil Company)* under B *(the unlawful acts of Russian Oligarchs and HVY)*.

In this part of the Defence on Appeal, the Russian Federation discusses the 28 cases of unlawful conduct of HVY and the "Russian Federation", which have already been advanced in the arbitrations and specified in the Defence on Appeal in footnotes 760 through 763. The latter are described in the Defence on Appeal (under 13) as "the Russian persons who have founded, own and control HVY". The alleged unlawful acts are subdivided into four phases in the Defence on Appeal, which phases are described as follows: the Russian Oligarchs acquired the Yukos shares from HVY by fraud, bribery and conspiracy: bribes were paid by YUL (phase 1), the Russian Oligarchs founded Hulley, YUL and VPL to conceal control over their Yukos shares and to evade dividend taxes (phase 2), the Russian Oligarchs abused shell companies to commit tax fraud in the low-tax regions of the Russian Federation (phase 3), the Russian Oligarchs obstructed tax collection while at the same time they withdrew billions of dollars from Yukos via HVY (phase 4).

4.1.2    Defence on Appeal IV under C sub b

In the Defence on Appeal further referred to as: *Part IV (Ground for setting aside 1 (follow-up) - the lack of a valid arbitration agreement)* under C *(Jurisdiction ground 2 - The Tribunal did not have jurisdiction because HVY and their shares in Yukos do not fall under the protection of the ECT)* sub b *(The ECT does not protect HVY's shares in Yukos because they are ultimately investments of Russian citizens in the Russian Federation)*.

The Russian Federation has further elaborated this assertion in the Defence on Appeal with the following arguments: (i) HVY are sham companies that are beneficially owned and controlled by Russian citizens for illegal purposes - in this context the Russian Federation relies partly on new documents disclosed since 2015; (ii) HVY are not 'Investors" and did not make any "Investments" within the meaning of the ECT because the ECT does not offer protection for U-turn investments by citizens of a host country via sham companies; (iii) HVY have not made any "Investments" under the ECT because they have not made an economic contribution in the host country; and (iv) the abuse of HVY's corporate structure by the Russian Oligarchs for illegal purposes justifies piercing the corporate veil to reveal the Russian citizens behind HVY.

4.1.3    Defence on Appeal IV under C sub c

In the Defence on Appeal further referred to as: *Part IV (Ground for setting aside 1 (follow-up) - the lack of a valid arbitration agreement)* under C *(Jurisdiction ground 2 - The Tribunal did not have jurisdiction because HVY and their shares in Yukos do not fall under the protection of the ECT)* under c b *(the ECT does not protect the investments of HVY because they were made in breach of the law)*.

In support if this assertion, the Russian Federation invokes the illegal nature of both making and executing the "alleged investment" of HVY, including the fraudulent acquisition by the Russian Oligarchs of the Yukos shares. According to the Russian Federation, HVY acquired their investments in Yukos by means of widespread violations of the law, whereby the Russian Federation refers to chapter H1 of the Defence on Appeal (see 4.1.1 in this respect). According to the Russian Federation, HVY were directly involved in the illegal acquisition of the Yukos shares. Furthermore, the Russian Federation argues in this context that: (i) the Russian Oligarchs obtained and retained beneficial ownership, control and power over Yukos via (predecessors of) HVY through deceit, corruption and fraud, (ii) HVY were incorporated and used by the Russian Oligarchs to evade tax, to obscure the Russian Oligarchs and to be able to submit claims under the ECT and (iii) HVY are only sham companies that do not engage in any business activity.

*Unofficial Translation*

4.1.4   Defence on Appeal VII under H

In the Defence on Appeal further referred to as: *Part VII* (Ground for setting aside 5, the Yukos Awards are contrary to public policy) under H (public policy ground 6 - enforcement of the Yukos Awards will lead to a violation of the public policy regarding the fraud, corruption and other serious illegalities).

The Russian Federation argues in this context that the outcome of the Awards amounts to a justification and maintenance of HVY's fraudulent, corrupt and illegal activities, which in itself - and certainly in connection with the way in which the arbitrations were conducted - is contrary to the fundamental principles of public policy and common decency mentioned in Article 1065(1)(e) DCCP. With regard to the alleged misconduct of HVY, the Russian Federation refers to chapters III.B, III.C and IV.C under c. With 'the way in which the arbitrations were conducted' the Russian Federation apparently refers to its assertion that the Tribunal arrived at its findings in breach of the principle of hearing both sides of the argument and equality of arms as well as in a speculative, subjective and inconsistent manner.

HVY's objections regarding the unclean hands argument

4.1.5   HVY's objections to these assertions can be distinguished in the following categories:

(a)   the assertions were not put forward in the arbitration in due time, as required on the basis of Article 1052(2) and Article 1065(2) DCCP;

(b)   the Tribunal's decision in question has not been contested in the summons in accordance with Supreme Court 22 March 2013, ECLI:NL:HR:2013:BY8099 (Bursa/Güris) and the assertions concerned have not been advanced in the initiating summons as required by Article 1064(5) DCCP;

(c)   the assertions are in violation of due process of law as referred to in Article 130 DCCP;

(d)   the Russian Federation has waived its right to base its claim on the unclean hands argument, or has forfeited this right.

assessment of HVY's objections regarding the unclean hands argument

4.2   *(a) Article 1052(2) DCCP*

4.2.1   HVY argue that the Russian Federation has failed to put forward the unclean hands argument in the arbitration in a timely manner, to wit in its Statement of Defence. According to HVY, the Russian Federation did put forward this argument in the Statement of Defence, but only as an argument regarding the admissibility and not to contest the jurisdiction of the Tribunal. According to HVY, this is in violation of Article 1052(2) DCCP, which provides that a reliance on the Tribunal's lack of jurisdiction on the ground that there is no valid arbitration agreement must be made by a party having appeared in the arbitration before all other defences, failing which that party forfeits its right to rely on that lack of jurisdiction at a later stage in the arbitration proceedings or before the ordinary court. In addition, HVY argue that the Russian Federation is not free to advance the unclean hands argument as substantiation of the assertion that HVY have not made an "Investment" within the meaning of Article 1(6) ECT and are not "Investors" within the meaning of Article 1(7) ECT because the Russian Federation has not advanced the unclean hands argument for that purpose in the Statement of Defence either.

4.2.2   In the arbitration, the Russian Federation used the unclean hands argument in the following context. In the Statement of Defence dated 15 October 2005, the Russian Federation contested the jurisdiction of the Tribunal on a number of grounds, but not with the unclean hands argument "Claimant Does Not Come To The Tribunal With Clean Hands"), which it did advance in the Statement of Defence as an argument for the inadmissibility of HVY's claim under the ECT ("These unlawful acts preclude this claim under the Treaty"). In the First Memorial on Jurisdiction and Admissibility dated 28 February 2006 the unclean hands argument was also exclusively put forward in the context of

*Unofficial Translation*

*inadmissibility.* Subsequently, the Tribunal decided in its Procedural Order No. 3 that, with regard to parties' assertions regarding the unclean hands and the accusation of "criminal enterprise", a decision will be given in the merits phase of the proceedings. In that sense also the Interim Award under 20 and 435. In the Interim Award, the Tribunal decided the following with regard to the unclean hands argument:

"(c)   CONFIRMS that its decision on the objections to jurisdiction and/or admissibility involving the Parties' contentions concerning "unclean hands" and Respondent's contention that "Claimant's personality must be disregarded because it is an instrumentality of a criminal enterprise" is deferred to the merits phase of the arbitration, consistent with Procedural Order No. 3;"

In the "Respondent's Skeleton Argument" of 1 October 2012, the Russian Federation argued the following under 96 in Chapter VUI ("The Tribunal Lacks Jurisdiction Over Claimants' Claims, Or Must Dismiss Them, Because They Are Based On Illegal Conduct By Claimants And The Yukos Managers They Installed And Controlled"):

"96. The history of repeated illegal conduct by Claimants (...) deprives the Tribunal of jurisdiction over Claimants' claims, because ECT protection does not extend to illegal investments, or requires that the Tribunal dismiss those claims under the principle of unclean hands. (..)"

In the Final Award the Tribunal treated the unclean hands argument as an argument that could lead to one or more of the following decisions: "(a) the Tribunal does not have jurisdiction over Claimants' claims; (b) Claimants' claims are inadmissible; and/or Claimants should be deprived of the substantive protections of the ECT" (Final Award nos. 1273, 1280, 1313, 1349, 1373). The Tribunal was of the opinion that it did not have to decide what legal effect the acceptance of the unclean hands argument would have (Final Award no. 1353). Finally, the Tribunal decided the following in the operative part of the Final Award:

"(b)   DISMISSES the objections to jurisdiction and/or admissibility, pertaining to Respondent's contentions concerning "unclean hands" and "illegal and bad faith conduct;"

4.2.3   This course of the proceedings demonstrates, in summary, that the Russian Federation relied on the lack of a valid arbitration agreement before all defences in the arbitration proceedings, but that it first substantiated this position at a later stage of the proceedings with the unclean hands argument. The Russian Federation did put forward the unclean hands argument in the arbitration before all defences, albeit as an argument in the context of the inadmissibility advocated by it.

4.2.4   The Supreme Court (Supreme Court 27 March 2009, ECLI:NL:HR:2009:BG6443 in the matter of Smit/Ruwa) has ruled as follows with regard to whether and to what extent it is admissible for a party that has relied on the absence of a valid arbitration agreement before all defences in the arbitration proceedings to substantiate its reliance thereon with new factual or legal positions in the further course of the arbitration proceedings or in the setting aside proceedings.

"3.4.1 (....) This combination of provisions [Article 1052(1) and (2), Article 1065(1) preamble and under a, Article 1065(2), Court of Appeal] seeks to ensure that, if a party wishes to contest the Tribunal's jurisdiction on account of the lack of a valid arbitration agreement, the Tribunal can decide on its jurisdiction at an early stage in the proceedings, thus preventing as much as possible that unnecessary procedural steps would be taken should a reliance on the lack of a valid arbitration agreement at a later stage of the proceedings (during the arbitration proceedings or before the ordinary court) result in the decision that the Tribunal has no jurisdiction."

3.4.2 (....) In view of the mutual interests in dispute, it cannot be accepted as a general rule that this is never allowed. For instance, it is conceivable that a party which relied on the lack of a valid arbitration agreement before all defences saw no reason to support its reliance on this ground with new factual or legal positions until after the other party advanced a defence against it (at a later stage of the arbitration proceedings or before the ordinary court). On the other hand, it also cannot be accepted as a general rule that there are no limits on advancing entirely new factual or legal positions in support of a timely raised ground at a later date, because this could undermine the statutory arrangement too gravely. Consequently, whether a new factual or legal position violates the purport of the statutory arrangement, given also the requirements of due process of law, will have to be assessed in each concrete case. Other relevant factors may be the

> extent to which the new positions align with the positions adopted earlier on in the arbitration proceedings, the reason why the new positions were not advanced sooner, and whether the party in question was supported by a lawyer in the arbitration proceedings."

4.2.5   Assessed based on this standard, the Russian Federation has remained within the limits of Article 1052(2) DCCP. When the Russian Federation invoked the unclean hands argument in the arbitration as an argument for the Tribunal's lack of jurisdiction, this was not a new argument. After all, it had already been advanced in the Statement of Defence in the context of the (in)admissibly and had already been contested as such by HVY.
The unclean hands argument that was put forward in the context of jurisdiction corresponded with the same argument that had already been advanced in the context of the *(in)admissibility*. There is no evidence to suggest, and HVY do not argue this either, that the unclean hands argument had to be challenged in a substantially different way or with other arguments because it was also advanced in the context of the jurisdiction at a later stage of the arbitration. Nor is there any evidence of violation of due process of law. Article 1052(2) DCCP therefore does not prevent the Russian Federation from putting forward the unclean hands argument at a later time than in the Statement of Defence in the arbitration or in these setting aside proceedings.

4.2.6   HVY also object to the fact that the Russian Federation currently puts forward the unclean hands argument in support of the assertion that HVY did not make an "Investment" within the meaning of Article 1(6) ECT and are not "Investors" within the meaning of Article 1(7) ECT whereas it did not put forward this argument in that context in the Statement of Defence. The Court of Appeal rejects this objection. In the Statement of Defence the Russian Federation relied on both the unclean hands argument (no. 47) and the lack of an "Investment" within the meaning of Article 1(6) ECT (nos. 30-34). The Russian Federation also argued in the Statement of Defence that the Tribunal "Lacks Jurisdiction *Ratione Personae"* (nos. 24-29), which argument can only be interpreted as a reliance on Article(1)(7) ECT. The Skeleton Argument of HVY (nos. 19-23) demonstrates that HVY also interpreted that argument as a reliance on Article 1(7) ECT.

4.2.7   It is correct that the Russian Federation did not advance the unclean hands argument in the Statement of Defence in the context of its reliance on Article 1(6) or 1(7) ECT. However, by combining these arguments the Russian Federation did not exceed the limits set out in the Smit/Ruwa ruling. After all, the unclean hands argument was not a new defence. Nor do HVY make it clear in what way due process of law would oppose the combination of existing arguments, or to what extent this would unreasonably prejudice HVY in their defence.

4.2.8   HVY s reliance on a violation of Article 1052(2) DCC is unsuccessful.

4.3   *(b) Article 1064(5) DCCP and the Bursa/Güris ruling*

4.3.1   HVY furthermore argue that the Tribunal expressly rejected the Russian Federation's accusations that were based on the unclean hands argument in the operative part of the Final Award and that the Russian Federation did not contest that decision with any ground for setting aside in the summons that initiated these setting aside proceedings. According to HVY, the fact that the Russian Federation does this for the first time in the Defence on Appeal is in violation of the Supreme Court March 2013, ECLI:NL:HR:2013:BY8099 (Bursa/Güris) ruling. According to HVY, then Supreme Court decided in that ruling that decisions of the Tribunal that have not been contested in the summons with a ground for setting aside cannot be contested later in the course of the setting aside proceedings.

4.3.2   In the initiating summons the Russian Federation did put forward as a
ground for setting aside that there is no valid arbitration agreement (Article 1065(1)(a)), but in that context did not invoke the unclean hands argument. In the Defence on Appeal (chapter III.B), the Russian Federation did advance the twenty-eight illegalities mentioned in the summons (nos. 30 et seq.) as "background information" and argued in that respect:

> ".... that the legal defects concerning the incorporation of Yukos is not one of the grounds on the basis of which the Russian Federation claims the setting aside of the Yukos Awards." (summons no. 27)

*Unofficial Translation*

4.3.3    In the Reply, the Russian Federation argued that the Tribunal did not have any jurisdiction, because HVY's investments were obtained in violation of the law and good faith and because it is certain that HVY was guilty of tax evasion on a large scale ("unclean hands") and are therefore not protected by article 1(6) ECT. The Russian Federation also argues in the reply that the illegality of HVY's investment, based on a fundamental principle of investment arbitrations, stands in the way of protection under the ECT and that the Tribunal did not have jurisdiction for that reason as well. In this context, the Russian Federation referred to the 28 cases of illegal or mala fide behaviour (Reply no. 265). In the Rejoinder, HVY argued by means of a reliance on the Bursa/Güris ruling that this appeal is late, because it is in violation of the provisions of Article 1064(5) DCC now that the unclean hands argument focuses on decisions of the Tribunal which the Russian Federation did not contest in the summons. The District Court did not assess the unclean hands argument or HVY's assertion that this argument was advanced too late.

4.3.4    Article 1064(5) DCCP provides that 'all grounds for setting aside must be advanced in the summons, subject to forfeiture of the right to advance them.' In its ruling Supreme Court 27 March 2009, ECLI:NL:HR:2009:BG4003 (Breeders/Burshan), the Supreme Court decided that the words "grounds for setting aside" used in Article 1064(5) DCCP refer to the grounds mentioned in Article 1065(1) under a through e DCCP. A ground for setting aside included in the summons may be further legally or factually elaborated later in the proceedings, provided that this is not in violation of Article 130 DCCP or Article 1052(2) DCCP in connection with Article 1065(2) DCCP, according to the Supreme Court. It follows from this that the Russian Federation is in principle allowed to put forward the unclean hands argument later than in the summons to substantiate its reliance on the lack of a valid arbitration agreement, provided that this is not in violation of due process of law or the provisions of Article 1052(2) in conjunction with Article 1065(2) DCCP.

4.3.5    HVY's position, that it would be decisive that the Russian Federation did not contest the decision of the Tribunal (in the operative part of the Final Award) about the unclean hands argument in the summons, is incorrect. The system of the law assumes that the setting aside of an arbitral award is claimed on the basis of one or more of the grounds for setting aside mentioned in Article 1065(1) DCCP. It is not required that the party requesting the setting aside of an arbitral award also (or instead) mentions in the summons the specific decisions it wants to contest with the grounds for setting aside of Article 1065(1) DCCP. This does not alter the fact that the Supreme Court decided in the Bursa/Güris ruling that, if a specific decision of the Tribunal (in that case concerning the costs of the arbitration) was contested in the summons with a specific ground for setting aside, it is not permitted to also contest that decision with a different ground for setting aside at a later stage of the proceedings, even if this other ground for setting aside was put forward in the summons to contest another decision. That specific situation, whereby later in the proceedings a new ground for setting aside within the meaning of Article 1064(5) DCCP was put forward to contest an arbitral award already contested in the summons with a different ground for setting aside, does not arise in the present case. Contrary to what HVY argue, it cannot be concluded from the Bursa/Güris ruling as a general rule that, if a ground for setting aside has not been advanced against a specific arbitral award in the summons in so many words, no further grounds for setting aside cannot be advanced against that award in the course of those proceedings. In the summons, the Russian Federation contested the Tribunal's jurisdiction with the ground for setting aside under Article 1065(1) under a DCCP. Based on the ruling in the matter of Breeders/Burshan, that ground can, within the limits indicated above, be further substantiated at a later stage of the proceedings with new factual or legal arguments, such as the unclean hands argument. Contrary to what HVY argue, it cannot be deduced from that ruling that such a further substantiation is permitted only in response to the defence put forward by the defendant or the judgment of the District Court.

4.3.6    Insofar as HVY argue that advancing the unclean hands argument later than in the summons exceeds the limits mentioned in the Breeders/Burshan ruling, the Court of Appeal will discuss this later insofar as it concerns the objection which HVY base on Article 130 DCCP. This demonstrates that this objection does not hold. Insofar as HVY argue that there is a violation of Article 1052(2) DCCP, this argument fails based on what the Court of Appeal has considered above.

4.3.7    HVY's reliance on Article 1064(5) DCCP is therefore unsuccessful.

4.4    *(c) Article 130 DCCP*

*Unofficial Translation*

4.4.1   HVY have substantiated their assertion that adding the unclean hands argument to the argument between the parties is in violation of due process of law, with the following arguments:

(i)   the late change of claim is of a very far-reaching nature because entirely new subjects are put up for discussion; this is unacceptable, also because in these proceedings the Russian Federation is assisted by lawyers specialised in arbitration law;

(ii)   allowing the unclean hands argument will lead to a very considerable and unreasonable delay of the proceedings; allowing the unclean hands argument means that 13 witness and expert statements with 554 accompanying exhibits must be handled, which HVY would then have to respond to with the prospect of a further debate on this matter;

(iii)   by advancing the unclean hands argument for the first time in its Defence on Appeal, HVY is deprived of the right to a full assessment of the case in two instances and the Russian Federation tries to prevent HVY from being able to respond to that argument in a complete written statement;

(iv)   the Russian Federation completely disregards the safeguards applicable within criminal proceedings, such as the presumption of innocence;

(v)   most of the acts on which the unclean hands argument is based were committed by third parties that are no parties to these proceedings;

(vi)   the manner in which the unclean hands argument is explained in the Defence on Appeal is unsound, because this argument is based on extensive references to "new" witness and expert statements which in turn refer to other material, whereas sound assertions in the Defence on Appeal itself are lacking.

4.4.2   The Court of Appeal states first and foremost that, contrary to what HVY argue, the unclean hands argument was not advanced in the defence on appeal for the first time, but in the Reply (see above under 4.3.3). Therefore, the assertion that the Russian Federation intentionally omitted this subject from the debate in the first instance, is incorrect. In the first instance, HVY did not object to the introduction of the unclean hands argument on the basis of Article 130 DCCP. Article 130(1) DCCP stipulates that the objection must be lodged at the latest before the final award in the relevant instance, failing which the District Court must base its decision on a changed claim. This means that HVY cannot for the first time on appeal successfully object to the unclean hands argument as such on the grounds of violation of due process of law. This does not alter the fact that HVY did argue in the Rejoinder that the unclean hands argument is in violation of the provisions of Article 1064(5) DCCP. After all, it does not include a reasoned objection on the grounds of due process of law as referred to in Article 130 DCCP.

4.4.3   In addition, the following is of importance. HVY's objection that it will not be able to adequately respond to the unclean hands argument fails. Since the unclean hands argument was put forward by the Russian Federation for the first time in the reply, HVY were able to respond to its substance in the rejoinder, in the oral arguments in the first instance and in the Statement of Appeal. They also made use of this possibility. This means that HVY had sufficient opportunity to respond to the unclean hands argument as put forward by the Russian Federation in the reply and further explained during the oral arguments. To that extent there was no violation of due process of law.

4.4.4   The Court of Appeal understands HVY's assertions in such a way that they also, and especially, argue that due process of law opposes the way in which, according to HVY, the Russian Federation *expanded* the unclean hands argument in the Defence on Appeal. Insofar as HVY rely on the introduction of "entirely new subjects" in this context, the Court of Appeal rejects this objection. After all, HVY have not indicated which subjects they have in mind. Insofar as HVY rely on the submission of new exhibits with the Defence on Appeal, their objection apparently focusses on the following.

(i)   the Russian Federation relies on 13 witness and expert statements with 554 accompanying exhibits, in respect of which the materials cover almost 10,000 pages for four of these thirteen statements;

*Unofficial Translation*

(ii)   the Russian Federation has announced its intention to introduce new witnesses for this subject, to use an ongoing criminal investigation on Yukos and to respond in a written statement to the written statement in which HVY will respond to the exhibits submitted with the Defence on Appeal.

4.4.5   The Court of Appeal rejects this objection because HVY has failed to argue in a sufficiently substantiated manner that, in the witness and expert statements and exhibits mentioned above in 4.4.4 under (i), there is indeed a change or increase of the claim or the grounds thereof within the meaning of Article 130(1) DCCP. It has neither been argued nor proven that these exhibits are anything other than written evidence of assertions (including assertions regarding international or foreign law) regarding the unclean hands argument which the Russian Federation has already put forward in the first instance. In this context, it should be borne in mind that the Russian Federation had already advanced several cases of unlawful conduct of HVY (Reply no. 28) in the first instance and had made a general offer of proof.
 Most of these assertions are suitable for an extensive factual and legal debate and the provision of evidence if necessary. The parties were not able to submit evidence in the first instance, but this does not mean that the Russian Federation increases its claim in an inadmissible way if it submits further written evidence of its assertions on appeal.

4.4.6   To the extent that the objection is directed against the circumstance that the Russian Federation has announced that it will introduce new witnesses for this subject, wants to make use of an ongoing criminal investigation concerning Yukos and to respond in a written statement to the written statement in which HVY will respond to the exhibits submitted with the Defence on Appeal, this objection is premature. It is difficult for the Court of Appeal to rule on the procedural acts that the Russian Federation may or may not perform in the future. As announced in the Court of Appeal's letter dated 23 January 2017, the Court of Appeal will decide on the further course of the proceedings after this ruling after having heard the parties, in respect of which the requirements of due process of law will be guiding.

4.4.7   It also is not plausible that the submission of the aforementioned exhibits will lead to an unreasonable delay in the proceedings. In view of the very large financial interests at stake in this dispute, the ten years of arbitration, the complexity of the issues debated by the parties and the size of the procedural documents (even if the exhibits submitted with the Defence on Appeal are not taken into account), a possible delay does not outweigh the interest of the Russian Federation in putting forward what it considers important in support of its claim. The fact that the Russian Federation is assisted by lawyers specialised in arbitration law does not have sufficient weight in this respect. The introduction of the "unclean hands argument" in the Reply also did not take place at an unreasonably late stage of the proceedings. It is also important in this respect that, even though the District Court did not get around to discussing the unclean hands argument, the devolutive effect of the appeal may entail that the Court of Appeal will still have to decide on this argument, in which context the provision of evidence will also be discussed. Against this background, it is not evident that there will ultimately be an unreasonable delay of the proceedings if evidence is submitted and discussed at this stage of the proceedings.

4.4.8   HVY also argue that, because the first time the Russian Federation invoked the unclean hands argument was in its Defence on Appeal, HVY is deprived of the right to a full assessment of the case in two instances. This argument does not hold because, as has been established above, the unclean hands argument was already advanced in the Reply. The District Court did not get around to discussing the unclean hands argument (and the objection lodged against it by HVY), because the District Court had already set aside the Yukos Awards on a different ground. Should the Court of Appeal consider the grounds for appeal put forward against this judgment to be well-founded, it would, in connection with the devolutive effect of the appeal, get around to discussing the other grounds for setting aside put forward by the Russian Federation, including – since, as will be concluded below, HVY's objection to this does not hold – the unclean hands argument. The Court of Appeal will not be allowed to refer the decision on this argument back to the District Court. If HVY is thus denied the possibility of litigating the unclean hands argument (including, according to HVY, the expansion of said argument in the Defence on Appeal) in two instances, that is the consequence of the devolutive effect of the appeal and the prohibition of referral back to the District Court, not of the fact that the Russian Federation put forward this argument too late. The fact that the prohibition on referral, where appropriate, may result in certain points of dispute not being heard in two instances is a consequence of the system of appeal accepted by the Supreme Court.

*Unofficial Translation*

4.4.9    HVY's reliance on conflict with the presumption of innocence does not hold. The purpose of these proceedings is not to impose a punitive sanction on one of the parties. The Russian Federation is free to put forward whatever it deems desirable in pleading its case. The assertion that the acts on which the unclean hands argument is based were committed by third parties does not mean that the Russian Federation is not free to argue that those acts should be alleged against HVY. There is no violation of due process of law.

4.4.10    Finally, HVY argues that the way in which the unclean hands argument is presented in the Defence on Appeal is unsound. Apparently, HVY is mainly concerned with the way in which reference is made the witness and expert statements submitted with the Defence on Appeal, and the way in which those statements refer to other statements and sources. HVY give a few examples of this (Document containing objection no. 139 with footnotes 159-161). However, HVY have not succeeded in demonstrating that the unclean hands argument – as a whole – was presented in an incomprehensible manner. Even if it is true that the Russian Federation may have presented its arguments in a number of cases in an unclear or unsound manner, that single fact does not mean that the unclean hands argument as such is in conflict with due process of law. HVY will be able to point out the alleged ambiguities in their response to the exhibits and the Court of Appeal will be able to draw the consequences it deems appropriate from any lack of clarity or incomprehensibility.

4.4.11    The conclusion is that there is no conflict with due process of law within the meaning of Article 130 of the DCCP.

4.5    *(d) waiver of rights and forfeiture of rights.*

4.5.1    Finally, HVY argues that the Russian Federation has waived its right to put forward the unclean hands argument to substantiate its claim for the setting aside of the Yukos Awards, or that it has forfeited the right to do so.

4.5.2    For a waiver of rights, it is decisive whether it is unambiguously evident that the argument in question has been abandoned. In the present case, the Russian Federation stated the following in the initiating summons under 26 and 27:

> "II. BACKGROUND
>
> 26.    Part A of this chapter provides a brief description of (a) the circumstances surrounding the acquisition of the control of Yukos by the same Russian oligarchs – particularly, Mikhail Khodorkovsky, Leonid Nevzlin, Vladimir Dubov and Platon Lebedev – who now control the Claimants [taken to mean HVY, Court of Appeal], (b) the principal features of Yukos' tax evasion scheme, which constitutes the basis of the parties' dispute, and (c) the Russian authorities' efforts to collect the corporation tax and VAT imposed on Yukos.
>
> 27.    In establishing this summary, the Russian Federation is aware that the District Court, in its assessment of the Yukos Awards, does not act as a court of appeal <u>and that the legal defects concerning Yukos' incorporation do not constitute one of the grounds on which the Russian Federation claims the setting aside of the Yukos Awards.</u> The Russian Federation nonetheless believes that this background information may be useful for the District Court to understand the actions taken by the Claimants since the incorporation of Yukos.
>
> (underlining Court of Appeal)

4.5.3    The passage in question does not unambiguously abandon the unclean hands argument, and HVY could not reasonably deduce this from this passage either. This passage states that this argument does not constitute one of the grounds on which the Russian Federation claims the setting aside of the arbitral awards. However, no words are used from which it can reasonably be deduced that the Russian Federation also states that it will not use this argument at a later stage in the proceedings to substantiate its assertion that the arbitral awards should be set aside on (one of) the grounds mentioned in Article 1065(1) of the DCCP. In this respect, the Court of Appeal also considers it important that it is permissible within the limits set in the Breeders/Burshan ruling (Supreme Court 27 March 2009, ECLI:NL:HR:2009;BG4003) that a ground for setting aside put forward in the summons is elaborated with new legal

*Unofficial Translation*

and factual assertions at a later stage in the proceedings. HVY should have taken this possibility into account. Furthermore, the Court of Appeal does not consider it clear what is meant by "legal defects concerning the incorporation of Yukos" in the passage cited. After all, the unclean hands argument contains considerably more than "legal defects concerning the incorporation of Yukos" (see more specifically the twenty-eight cases of unlawful conduct, summarized in the Final Award under 1281-1310 and the assertions in the initiating summons under 30 et seq.). In addition, the alleged unlawful conduct on which the unclean hands argument is based has been extensively explained in the summons as 'background' that may be useful to the District Court. This means that HVY could not reasonably deduce from this passage that the Russian Federation abandoned the unclean hands argument.

4.5.4   In essence, HVY did not substantiate its reliance on the forfeiture of rights in any way other than by referring to the above-discussed passage from the initiating summons. That reliance therefore fails on the same grounds as the reliance on the waiver of rights. The specific, abovementioned, underlined statement by the Russian Federation in the initiating summons is in itself insufficient to assume that it is unacceptable according to standards of reasonableness and fairness that the Russian Federation still invokes the unclean hands argument in the Reply. It is important in this respect that it cannot be assumed that HVY was disproportionately prejudiced in its defence because the first time that the Russian Federation invoked the unclean hands argument was in its Reply. The Court of Appeal refers to what it considered above in connection with HVY's reliance on Article 130 of the DCCP.

4.5.5   HVY's objection that is based on a waiver of rights and forfeiture of rights also fails.

<u>conclusion regarding</u> the unclean hands argument

4.6   The conclusion is that the objection to the unclean hands argument is unfounded.

5.   **(H) fraud committed by HVY in the arbitration**

<u>the assertions regarding the fraud in the arbitration to which HVY object</u>

5.1   HVY object to the following assertions in the Defence on Appeal, which all entail that HVY, in the arbitrations, concealed that the beneficiaries of the trusts (who ultimately hold the shares in HVY) have the ownership and control of HVY. HVY's objection focuses on the following assertions of the Russian Federation:

(i)   the Yukos Awards are contrary to public policy due to the fraud committed by HVY during the arbitration, comprising the submission of false statements and the withholding of documents (Defence on Appeal, Chapter VII.G);

(ii)   there is no valid arbitration agreement because HVY and their shares in Yukos do not fall within the scope of protection of the ECT (the ECT does not protect HVY's investments because, ultimately, they are investments of Russian citizens in the Russian Federation), since (a) HVY are sham companies under the beneficial ownership and control of Russian citizens for illegal purposes – in this context the Russian Federation relies partly on new documents disclosed since 2015 – and (b) the abuse of HVY's corporate structure by the Russian Oligarchs for illegal purposes justifies piercing the corporate veil to reveal the Russian citizens behind HVY (Defence on Appeal, Chapter IV.C under b (i) and (iv) respectively);

(iii)   Contrary to the Procedural Order no. 12 dated 16 September 2011 in the arbitration, HVY have neglected to submit the documents mentioned in the Defence on Appeal, marginal 637 under (a) through (d), and the agreement from 2011 between GML Limited on the one hand and the directors of the Stichting Administratiekantoor Yukos International and the Stichting Administratiekantoor Financial Performance Holdings on the other hand (described in the Defence on Appeal, marginals 637 and 640), the further correspondence regarding this agreement and the minutes of meetings of the bodies of these foundations (mentioned in the Defence on Appeal, marginal 640) (Defence on Appeal, Chapter III.C).

5.2   In the Defence on Appeal, Chapter VII.G (see 5.1 (i) above), the Russian Federation provided the following

*Unofficial Translation*

substantiation for its assertion that HVY submitted false statements and withheld documents during the arbitration:

(i) HVY lied to the Tribunal by submitting false statements and withholding documents that are relevant to crucial points in dispute in the arbitration, primarily by claiming with a straight face that HVY were controlled not by the Russian Oligarchs but by the trustees (Defence on Appeal no. 1197);

(ii) HVY concealed their true relationship with the Russian Oligarchs and the wide-spread crime in which their alleged investment in Yukos is steeped, and they violated the Document Production Orders of the Tribunal (Defence on Appeal no. 1198 (a));

(iii) HVY neglected to submit the 2011 letter from GML Limited and the 'responsive documents and notices that should probably exist' regarding the participation of the Russian Oligarchs in the decision-making within HVY in relation to important business transactions, such contrary to a Document Production Order of the Tribunal (Defence on Appeal no. 1198 (b));

(iv) HVY withheld documents on the full chain of transactions regarding the Yukos shares, thereby concealing HVY's direct connection with the Russian Oligarchs and the illegal acquisition of the shares in Yukos by the Russian Oligarchs, such contrary to a Document Production Order of the Tribunal (Defence on Appeal no. 1198 (c));

(v) HVY made false statements in the documents they submitted to the Tribunal by arguing a divide between them and the Russian Oligarchs and emphasising the legality of their acquisition of shares in Yukos, despite the fact that documents in their possession showed otherwise, because the acquisition of the shares was unlawful, invalid and therefore void (Defence on Appeal no. 1198 (d));

(vi) the Russian Oligarchs made secret payments to Andrei Illarionov, one of HVY's main witnesses in the arbitration (Defence on Appeal no. 1198 (e)).

HVY's objections regarding fraud in the arbitration

5.3   HVY object to the assertions referred to under 5.1 (i), (ii) and (iii) above on the following three grounds:

(a) the change of claim is contrary to Article 1064(5) DCCP: the Tribunal's decisions regarding ownership and control of HVY were not challenged by the Russian Federation in the initiating summons and according to the Bursa/Güris ruling (Supreme Court 22 March 2013, ECLI:NL:HR:2013:BY8099) this may not be done at a later stage of the proceedings;

(b) the change of claim is contrary to Article 1068 DCCP: the Russian Federation should have brought the revocation proceedings of Article 1068 DCCP or submitted its change of claim within three months after it became aware or should have been aware of the facts underlying its assertion that fraud was committed or that documents were withheld;

(c) the change of claim is contrary to the requirements of due process of law (Article 130 DCCP).

assessment of HVY's objections regarding fraud in the arbitration

5.4   The Court of Appeal sees reason to deal with the objection mentioned under (b) first.

5.5   In the Defence on Appeal, Chapter IV.C under b (i), the Russian Federation did not raise any new cases of fraud, but merely made reference to 'new documents' (no. 665) that, according to it, HVY should have submitted in the arbitration, by which the Russian Federation apparently means the documents described under 5.1 (iii) above. As far as the Court of Appeal can tell, the Russian Federation did not rely on fraud or deception in the arbitration in the Defence on Appeal, Chapter IV.C.(b) under (iv). Thus, what matters is the assertions regarding fraud and the

*Unofficial Translation*

withholding of documents in the arbitration as referred to under 5.1 (i), elaborated in more detail under 5.2, and 5.1 (iii) above.

5.6     HVY rightly argue that these assertions, if correct, could constitute grounds for claiming the revocation of an arbitral award under Article 1068(1) DCCP. The accusation that HVY neglected to submit certain documents that were relevant to the Tribunal's decision falls under the ground for revocation of Article 1068(1)(c) DCCP. The accusations that HVY – the Russian Federation clearly means: deliberately – made false and/or incorrect statements, concealed the actual state of affairs, or improperly influenced a witness all fall under the ground for revocation of Article 1068(1)(a) DCCP.

5.7     HVY also rightly argue that these accusations can be addressed only in revocation proceedings under Article 1068 DCCP, not in setting aside proceedings such as these. The legal effect of setting aside on account of one of the grounds of Article 1065(1) DCCP and on account of revocation are the same (cf. Art. 1068(3) DCCP): the jurisdiction of the ordinary court is revived, unless the parties agreed otherwise. However, there are differences with respect to the term within which both legal remedies must be exercised and with respect to the competent judicial authority. If more than three months have passed since the arbitral award acquired the authority of res judicata, it is still possible to claim revocation within three months after the fraud or falseness was discovered or one of the parties obtained the new documents. There is no such additional term for setting aside proceedings. Another difference with respect to the setting aside proceedings is that the claim for revocation is brought before the Court of Appeal that would have jurisdiction to hear an appeal regarding the claim for setting aside within the meaning of Article 1064 DCCP, while the setting aside proceedings (which in this case are subject to the old law) are brought before the District Court. Consequently, revocation proceedings only have one fact-finding instance. If it were possible to claim the setting aside of the arbitral award on account of one or more of the grounds for setting aside of Article 1065(1) DCCP on the basis of the assertion that the other party committed fraud or withheld documents during the arbitration, then not only would it be possible to achieve the same result as with a claim for revocation, but it would also be possible to escape, in circuitous ways, both the aforementioned term of three months and the exclusive jurisdiction of the Court of Appeal as the only fact-finding instance, for example by, through a change of claim in setting aside proceedings pending before the District Court more than three months after the discovery of the fraud, raising fraud as a new argument for a reliance on Article 1065(**check source: missing paragraph number)(e) DCCP that was already made in the summons. Such a consequence is unacceptable.

<u>conclusion regarding fraud in the arbitration</u>

5.8     Therefore, the conclusion is that HVY's objection to the assertions of the Russian Federation mentioned under 5.1 (i), elaborated under 5.2, and 5.1 (iii) above is well-founded. The Court of Appeal need not address HVY's objections under (a) and (c) (see 5.3 above).

6.      **(III)   Article 1(6) and (7) ECT and the question whether HVY's shares in Yukos can be considered an 'Investment' within the meaning of paragraph (6) and HVY can be considered 'Investors' within the meaning of paragraph (7).**

<u>the Russian Federation's assertions regarding Article 1(6) and (7) ECT to which HVY object</u>

6.1     The Court of Appeal understands that HVY's objection focuses on the following assertions of the Russian Federation:

(i)     the assertion in the Reply that HVY's shares in Yukos are not an 'Investment' within the meaning of Article 1(6) ECT;

(ii)    the substantiation of assertion (i) in the Defence on Appeal with the arguments (a) that an injection of foreign capital is required to qualify as an 'Investment' within the meaning of the ECT, and (b) that HVY made no 'economic contribution in the host country' (Defence on Appeal, Chapter IV.C under b (iii));

*Unofficial Translation*

(iii)      the assertion that HVY and the Russian Oligarchs should be considered one and the same (Defence on Appeal, Chapter IV.C under b (iv)) and that HVY are therefore not investors within the meaning of Article 1(7) ECT.

HVY's objections to the assertions regarding Article 1(6) and Article 1(7) ECT

6.2      HVY's objections to these assertions entail the following:

(a)      the Russian Federation in the summons did not contest with substantiation the decisions of the Tribunal to the extent that these pertained to Article 1(6) ETC, in particular the decision of the Tribunal that an injection of foreign capital is not required to qualify as an Investment within the meaning of the ECT, so that it is contrary to Article 1064(5) DCCP and the Bursa/Güris ruling to contest that decision still at a later time; it is also contrary to the requirements of due process of law within the meaning of Article 130 DCCP;

(b)      the argument that HVY made no 'economic contribution in the host country' is (a) inadmissible under Article 1052(2) and Article 1065(2) DCCP, because the Russian Federation did not include that assertion in the arbitration in its Statement of Defence, (b) contrary to Article 1064(5) DCCP and the Bursa/Güris ruling, because that assertion was not raised in the initiating summons, and (c) contrary to the requirements of due process of law within the meaning of Article 130 DCCP;

(c)      the assertion that HVY and the Russian Oligarchs should be considered one and the same is contrary to Article 1064(5) DCCP and the Bursa/Güris ruling, because that assertion was not raised in the initiating summons.

assessment of HVY's objections regarding Article 1(6) and Article 1(7) ECT

6.3      In the initiating summons, the Russian Federation claimed the setting aside of the Yukos Awards with, first and foremost, a reliance on Article 1065(1)(a) DCCP (the lack of a valid arbitration agreement). In that context, the Russian Federation turned against, among other things, the Tribunal's decision that HVY's shares were protected by the ECT 'only' (in the words of the Russian Federation) because HVY were incorporated in Cyprus and the Isle of Man and 'they nominally owned the Yukos shares at issue' (summons no. 255). Thus, in summons no. 9, the Russian Federation asserts that the Tribunal wrongly rejected the Russian Federation's arguments against jurisdiction on the basis of Article 1(6) and (7) ECT, which provides which investors and investments are protected by the ECT. According to the Russian Federation, the Tribunal rejected this argument despite the fact that HVY are sham companies acting as a front for Russian subjects.

In that context, the Russian Federation also argued the following in the summons:

(a)      in particular, the (Russian) Oligarchs attempted to convert their domestic dispute with the Russian tax department into an international investment treaty arbitration by submitting their claims through HVY, three offshore shell companies that the Oligarchs created specifically to hold their Yukos shares (no. 5);

(b)      the Tribunal started from too literal an interpretation of the definition of 'Investment' in Article 1(6) ECT (summons no. 256, 263); the Russian Federation also argued elsewhere in the summons that there was no valid arbitration agreement because HVY's shares are not protected by Article 1(6) ECT (no. 30 under (b) and no. 106 under (b));

(c)      the Tribunal lacks jurisdiction under Article 1(6) and (7) ECT because HVY's shares in Yukos are not protected by the ECT; the present case is a domestic Russian dispute, HVY are sham companies, Russian subjects are the beneficial owners of HVY, and therefore this is not a truly international case within the scope of application of the ECT, but a domestic Russian dispute between Russian subjects and the Russian Federation; the Tribunal therefore lacks jurisdiction on the basis of Article 26 ECT in conjunction with

*Unofficial Translation*

      Article 1(6) and (7) ECT (no. 248);

(d)      HVY are just sham companies under the beneficial ownership and control of Russian subjects (heading for no. 257);

(e)      to the extent that HVY paid anything for their shares in Yukos, they did so with financial means of Russian origin (no. 258); HVY invested no foreign capital in the territory of the Russian Federation (no. 220);

(f)      the ECT does not protect the investments made by HVY in Yukos because these investments were made by subjects of a contracting party in the territory of and using resources from that contracting party; investment treaties focus entirely on promoting and protecting foreign investments, not domestic ones (no. 262).

6.5      It follows from the foregoing that the Russian Federation, in the summons, contested the Tribunal's decision regarding its jurisdiction and the Tribunal's interpretation of Article 1(6) and (7) ECT, that the Russian Federation, to substantiate its ground for setting aside of Article 1065(1)(a) DCCP, relied on the assertion that there was no question of an 'Investment' or 'Investors' within the meaning of Article 1(6) or (7) ECT because the resources HVY used to make the investment were of domestic (Russian) origin and HVY are sham companies, so that it essentially concerned an investment by Russian subjects in the Russian Federation instead of an international case within the scope of the ECT. It is clear from these assertions that there was no question of an injection of foreign capital. The assertion that the Russian Federation did not rely on Article 1(6) and (7) ECT until the Reply and did not substantiate it until the Defence on Appeal is therefore incorrect. It is also incorrect that the Russian Federation did not contest the Tribunal's decision regarding the meaning of Article 1(6) and (7) ECT, whereby it should also be noted that HVY started from an incorrect interpretation of the law in taking the position that the party claiming the setting aside of an arbitral award is always required to contest specified decisions of the Tribunal in that award with specific grounds for setting aside in the initiating summons (see 4.3.5 above).

6.6      HVY also argue that the Russian Federation's assertion that HVY provided no 'economic contribution in the host country' is inadmissible on the basis of Article 1052(2) and Article 1065(2) DCCP, because the Russian Federation did not advance that assertion in the arbitration in its Statement of Defence. The Court of Appeal will assume that the Russian Federation did not advance this assertion (in this wording) in the arbitration because the Russian Federation did not contest this. The question whether the Russian Federation is in that case free to advance this assertion for the first time in these setting aside proceedings must be answered on the basis of the criteria formulated in the Smit/Ruwa ruling, cited under 4.2.4 above. The assertion in question is essentially part of or at least follows from an assertion that the Russian Federation did advance in the arbitration (and in the Statement of Defence), namely that HVY made no foreign investment because any investment in Yukos originated from the Russian Federation. After all, it is obvious that a foreign investment in the host country will generally provide some economic contribution to the economy of that host country. It is therefore not contrary to Article 1052(2) and Article 1065(2) DCCP for the Russian Federation to advance this assertion still in these proceedings.

6.7      HVY's argument that advancing the assertion in question is contrary to the requirements of due process of law is unsubstantiated and fails for that reason alone. It moreover cannot be understood why advancing this assertion, which as noted is close to previous assertions in the arbitration and these proceedings, would unreasonably prejudice HVY's procedural position or unreasonably delay the proceedings. This means that it is not contrary to Article 1064(5) DCCP either. After all, the Russian Federation is free to substantiate the ground for setting aside of Article 1065(1)(a) DCCP, advanced in the summons, with new legal or factual assertions at a later stage of the proceedings (Supreme Court 27 March 2009, ECLI:NL:HR:2f009:BG4003 in the matter of Breeders/Burshan). The limits imposed on this freedom, as evident from the foregoing, have not been exceeded in this case.

6.8      Lastly, HVY advance that the assertion that HVY and the Russian Oligarchs should be considered one and the same is contrary to Article 1064(5) DCCP and the Bursa/Güris ruling, because that assertion was not raised in the initiating summons. This objection does not hold water. After all, the assertion in the summons that HVY are only sham companies under the beneficial ownership and control of Russian subjects (whereby the Russian Federation

*Unofficial Translation*

unmistakably means the Russian Oligarchs) can hardly be taken to imply anything other than that HVY and the Russian Oligarchs should be considered one and the same, because HVY, being sham companies, should be crossed out. It should be noted that HVY's objection demonstrates an incorrect interpretation of the scope of Article 1064(5) DCCP and the Bursa/Güris ruling. The Court of Appeal refers to its previous considerations on this subject.

conclusion regarding Article 1(6) and Article 1(7) ECT

6.9   The conclusion is that the objections to the assertions of the Russian Federation mentioned under 6.1 fail.

7.   **Conclusion; further course of the proceedings**

7.1   HVY's objection to the assertions of the Russian Federation mentioned under (i), elaborated under 5.2, and 5.1 (iii) above is well-founded. The remainder of the objection is unfounded. There is no interest in the claimed judicial declarations, insofar as these fit within the context of these motion proceedings.

7.2   As the Court of Appeal announced in its letter dated 23 January 2017 and at the end of the oral arguments in the motion proceedings, the parties will now be given the opportunity to comment on the continuation of the proceedings. The basic assumption, which is not in dispute between the parties, is that HVY will in any event be allowed to respond in writing to the exhibits submitted with the Defence on Appeal. The parties will also be allowed to comment on the question whether HVY should also be allowed to respond to the Defence on Appeal, or parts thereof.

7.3   The parties are also requested to comment on the question whether the Court of Appeal, to avoid unreasonable delays in the proceedings, should provide that the parties will at some point no longer be allowed to submit further exhibits to the proceedings during the written exchange of documents (without prejudice to their right to submit exhibits with oral arguments).

7.4   The parties are also requested to comment on the question of what is the reasonable term that the parties should observe when sending in exhibits prior to the closing arguments.

7.5   Lastly, the parties are requested to include an expected timetable up to and including the closing arguments in their proposals regarding the further course of the proceedings. The Court of Appeal would prefer to hold the closing arguments no later than in June 2019.

7.6   A joint proposal by the parties for the further course of the proceedings will have preference, on the understanding that the Court of Appeal has its own responsibilities and may deviate from such a proposal if necessary.

7.7   The case will be placed on the cause list for filing a document containing comments, first on the part of HVY. The Russian Federation will then be allowed to reply to that document. No exhibits may be submitted with these documents.

**Decision**

The Court of Appeal:

-   declares HVY's objection to the assertions of the Russian Federation as stated under 5.1 sub (i) and further elaborated under 5.2 and 5.1 sub (iii) above to be well-founded;

-   declares the objection unfounded in all other respects and accordingly rejects all other claims of HVY;

-   refers the case to the cause list of 23 October 2018 for filing a document containing comments within the meaning of point 7.7 of this ruling, first on the part of HVY;

*Unofficial Translation*

- stays the decision with regard to the costs of the motion proceedings until the final ruling;

- stays all further decisions.

This ruling was rendered by S.A. Boele, C.A. Joustra and J.J. van der Helm and was pronounced at the public hearing of 25 September 2018 in the presence of the court clerk.

[signature]                                                                 [signature]

Issued as a true copy,

The Clerk of the Court of Appeal in The Hague

[signature]