Exhibit 1

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

## In the name of the King

# SUPREME COURT OF THE NETHERLANDS

## CIVIL LAW DIVISION

**Number**   20/01892
**Date**   4 December 2020

# DECISION

In the matter of

THE RUSSIAN FEDERATION,
seated in Moscow, Russian Federation,
APPLICANT,
hereinafter: the Russian Federation,
attorneys: R.S. Meijer and R.R. Verkerk,

*v.*

1.   HULLEY ENTERPRISES LIMITED,
     established in Nicosia, Cyprus,
2.   VETERAN PETROLEUM LIMITED,
     established in  Nicosia, Cyprus,
3.   YUKOS UNIVERSAL LIMITED,
     established in  Douglas, Isle of Man,
RESPONDENTS,
hereinafter: HVY and individually also Hulley, VPL and YUL.
attorneys: T. Cohen Jehoram, J. de Bie Leuveling Tjeenk and B.M.H. Fleuren.



Page 1 of 15

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

## 1. Course of the proceedings

For the course of the proceedings so far the Supreme Court refers to its interim judgement in the motion on jurisdiction of 25 September 2020, ECLI:NL:HR:2020:1511.

HVY subsequently filed a statement of defence in the main proceedings.

On 30 October 2020, the parties had the case pleaded at an oral hearing on the basis of pleading notes, which they submitted.

The opinion of Advocate General P. Vlas concludes that the Russian Federation's applications must be denied.

The Russian Federation's attorneys have responded to that opinion in writing.

The Supreme Court has taken note of HVY's letter of 30 November 2020 and of the Russian Federation's letter of 30 November 2020.

## 2. Points of departure

2.1   This case pertains to the question of whether the enforcement of the arbitral awards rendered between the parties must be suspended on the basis of Article 1066(2) (old) of the Dutch Code of Civil Procedure [DCCP] until the claim for setting aside has been irrevocably decided. In addition, it is at issue whether one of the parties must provide security on the basis of Article 1066 (5)(old) DCCP.

2.2   The Supreme Court assumes the following facts.

(i)     HVY are, or at least were, shareholders in Yukos Oil Company (hereinafter: Yukos).

(ii)    In 2004, VPL, YUL and Hulley each initiated arbitration proceedings against the Russian Federation on the basis of Article 26 of the Energy Charter Treaty[1] (hereinafter: ECT or the Treaty). The place of arbitration was The Hague. In those arbitration proceedings, HVY stated – briefly put – that the Russian Federation had expropriated their investments in Yukos and had failed to protect these investments, and sought an order for the Russian Federation to pay damages.

(iii)   After three separate Interim Awards, the arbitral tribunal (hereinafter: the Tribunal) ordered, in three separate Final Awards, the Russian Federation to, *inter alia*, pay damages of USD 8,203,032,751.00 (to VPL), USD 1,846,000,687.00 (to YUL) and USD 39,971,834,360.00 (to Hulley). The Interim Awards and the Final Awards are hereinafter jointly referred to as the Yukos Awards.

(iv)    On the basis of Article 1064(2) (old) DCCP, the Russian Federation sought the setting aside of the Yukos Awards before the District Court. The District Court set aside the Yukos Awards on account of the lack of a valid arbitration agreement.[2] The Court of Appeal annulled the judgment of the District Court and denied the Russian Federation's claim to set aside the Yukos Awards.[3]

---

[1] Treaty Series, 1995, 108.

[2] District Court of The Hague 20 April 2016, ECLI:NL:RBDHA:2016:4229.

[3] Court of Appeal of The Hague 25 September 2018, ECLI:NL:GHDHA:2018:2476 and Court of Appeal of The Hague 18 February 2020, ECLI:NL:GHDHA:2020:234. For a summary of the latter judgment, see the Advocate General's opinion at 2.13-2.31.

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

The Russian Federation instituted a cassation appeal against the Court of Appeal's judgments. [4]
HVY instituted a conditional cross appeal in cassation. These appeals have not yet been decided.

2.3     In these proceedings, the Russian Federation is applying to the Supreme Court on the basis
of Article 1066 (old) DCCP, in summary, to:
  –     primarily (i) by way of a provisional suspension measure order HVY to suspend all
        pending and future enforcement measures with regard to the Yukos Awards until the
        Supreme Court has rendered a decision on the suspension application on the basis
        of Article 1066 (old) DCCP, and (ii) suspend the enforcement of the Yukos Awards
        on the basis of article 1066 (old) DCCP until the claim for setting aside has been
        irrevocably decided; and
  –     alternatively, if the suspension application is denied, to order HVY to provide security
        on the basis of Article 1066 (5) (old) DCCP.

2.4     By interim decision of 25 September 2020, the Supreme Court declared – in response to a
        defence contesting jurisdiction put forward by HVY – that it had jurisdiction to hear the
        Russian Federation's applications based on Article 1066(2) and (5) (old) DCCP. [5]

2.5     HVY subsequently put forward a substantive defence against the Russian Federation's
        applications, which, according to HVY, must be denied. For the event that the Russian
        Federation's suspension application is granted, HVY are requesting that the Russian
        Federation be ordered to provide security.

2.6     The parties explained their positions in more detail during the oral pleadings on 30 October
        2020.

2.7     The opinion of the Advocate General concludes that the Russian Federation's applications
        must be denied. The Russian Federation's attorneys responded to that opinion in writing.

3.      **Assessment of the Russian Federation's applications**

3.1     These proceedings are subject to the Fourth Book (Arbitration) of the Dutch Code of Civil
        Procedure, as applicable until 1 January 2015. [6]

3.2     Below, the Supreme Court will first discuss the Russian Federation's primary application to
        suspend the enforcement of the Yukos Awards until the setting-aside claim has been

---

[4] Those cassation proceedings are pending before the Supreme Court under case number 20/01595.
[5] Supreme Court 25 September 2020, ECLI:NL:HR:2020:1511.
[6] Article IV (4) in conjunction with Article IV (2) of the Act of 2 June 2014 amending Book 3, Book 6 and Book 10 of the Dutch
Civil Code and the Fourth Book of the Dutch Code of Civil Procedure in connection with the modernisation of Arbitration Law
(Bulletin of Acts and Decrees 2014, 200), which entered into force on 1 January 2015 (Bulletin of Acts and Decrees 2014,
254).

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

irrevocably decided. Thereafter, the Supreme Court will discuss the Russian Federation's alternative application with regard to the provision of security.

3.3.1   On the basis of Article 1065 (1) (old) DCCP, the setting aside an arbitral award can be sought on the grounds exhaustively listed in that provision. In the assessment of the setting-aside claim, the court must exercise restraint – except in so far as this claim is based on (i) the absence of a valid arbitration agreement[7] or (ii) a breach of the right to be heard. [8] After all, setting-aside proceedings may not be used as a disguised appeal. After all, the general interest in the effective functioning of arbitral justice means that the civil courts should only intervene in arbitral decisions in telling cases. [9]
The claim for setting aside does not suspend the enforcement of the arbitral award (Article 1066 (1)(old) DCCP). However, the court that decides on a claim to set aside may, at the request of any party, if there are grounds to do so, suspend the enforcement until the claim to set aside has been irrevocably decided (Article 1066(2) (old) DCCP).

3.3.2   The suspension application on the basis of Article 1066(2) (old) DCCP is aimed at obtaining a provisional measure. In its decision on that suspension application, the court must make a provisional assessment of the claim for setting aside the arbitral award and, in addition, balance the interests of the parties. In making this provisional assessment, the court will have to assume that the claim for setting aside can only succeed if a ground for setting aside as referred to in Article 1065 (old) DCCP is present. [10]
If, in the setting aside proceedings, the court in the previous instance has already rendered a decision on the claim for setting aside, the court that decides on the suspension application must take that decision into account. This entails that in the event that the court in the setting aside proceedings denied the claim for setting aside, the court deciding on the suspension application must observe more restraint than in the case in which the court in the setting aside proceedings has not yet given a decision.

3.3.3   In this case it is so that in the setting aside proceedings both the District Court and the Court of Appeal have already rendered a decision on the claim for setting aside, and a cassation appeal is pending against the judgments of the Court of Appeal in which the claim for setting aside was denied (see 2.2 (iv) above).
This means that in these suspension proceedings, the Supreme Court must come to a provisional decision of the question of whether the complaints in the in cassation proceedings directed against the Court of Appeal's decision – also in view of the limitations attached to Supreme Court review – will lead to the annulment of (one of) the judgments of the Court of Appeal. In addition, the Supreme Court must come to a provisional decision of the question of whether this will (ultimately) lead to a different outcome in the setting aside proceedings – namely: the setting aside of the Yukos Awards.

---

[7] Supreme Court 26 September 2014, ECLI:NL:HR:2014:2837, para. 4.2.
[8] Supreme Court 25 May 2007, ECLI:NL:HR:2007:BA2495, para. 3.5.
[9] Supreme Court 9 January 2004, ECLI:NL:HR:2004:AK8380, para. 3.5.2 and Supreme Court 17 January 2003, ECLI:NL:HR:2003:AE9395, para. 3.3.
[10] Cf. Supreme Court 21 March 1997, ECLI:NL:HR:1997:ZC2314, para. 3.5.



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

3.3.4    When making a provisional decision on the question of whether the complaints in cassation proceedings directed against the decision of the Court of Appeal will lead to the annulment of (one of) the judgments of the Court of Appeal, the Supreme Court will only consider cassation complaints that are stated in the suspension application or to which (sufficiently specific) reference is made in that application.

3.4    Below – with due observance of the considerations above – the Supreme Court will first form a provisional decision on the claim for setting aside the arbitral award instituted by the Russian Federation. In that context the Russian Federation's arguments in the suspension application with regard to (i) the validity of the arbitration agreement, (ii) the Tribunal's mandate, (iii) the composition of the Tribunal, (iv) the lack of reasons stated for the Yukos Awards and (v) public policy will be discussed in succession. Thereafter, the Supreme Court will balance the interests of the parties in granting or denying the suspension application.

*The validity of the arbitration agreement*

3.5    On the basis of Article 1065(1), opening words and (a) (old) DCCP, the arbitral award can be set aside if there is no valid agreement to arbitrate. In the suspension application, the Russian Federation referred in this context to complaints in the ground for cassation in the setting aside proceedings which are directed against the Court of Appeal's decision on (a) the interpretation and application of the Limitation Clause of Article 45(1) ECT, (b) the terms 'investment' and 'investor' and (c) the protection of illegal investments. According to the Russian Federation, these complaints must lead to the annulment of the Court of Appeal's decision that there is no reason to set aside the Yukos Awards on account of the lack of a valid arbitration agreement.

*The interpretation and application of the Limitation Clause*

3.6    In paras. 4.4.1-4.5.48[11], the Court of Appeal decided on the interpretation of the Limitation Clause of Article 45(1) ECT and subsequently decided in para. 4.6.1 that, based on this interpretation, the provisional application of Article 26 ECT (which clause enables international arbitration with regard to the disputes referred to in Article 26(1) ECT) is not inconsistent with the Russian Federation's 'constitution, laws or regulations'.
Subsequently, in paras. 4.6.2-4.7.58, the Court of Appeal considered that, even if the Russian Federation's divergent interpretation of the Limitation Clause is followed, Article 26 ECT must be applied provisionally by the Russian Federation.
The Supreme Court decides provisionally that these two grounds each independently carry the Court of Appeal's decision that Article 26 ECT must be provisionally applied by the Russian Federation.

3.7.1    With regard to the second independent ground referred to above in 3.6, in its suspension application the Russian Federation refers to complaints from part 2 of the ground for cassation in the setting aside proceedings, which are directed against the rejection by the

---

[11] Where the Supreme Court refers in this judgment to legal findings of the Court of Appeal, unless stated otherwise, reference is made to paragraphs in the Court of Appeal's final judgment of 18 February 2020.

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

Court of Appeal of the Russian Federation's argument, (i) that under Russian law disputes on powers of public law are not eligible for arbitration, (ii) that the arbitration proceedings between HVY and the Russian Federation are therefore inconsistent with Russian law and (iii) that, in that light, Article 26 ECT does not apply provisionally on the basis of the Limitation Clause. The complaints argue that, in rejecting this argument, the Court of Appeal wrongly qualified Article 26 ECT as the basis for arbitration of disputes of a public law nature such as the present one and thus assumed that Article 26 ECT was part of the Russian internal legal system, and that this constitutes a circular argument.

3.7.2   The Court of Appeal rejected the Russian Federation's argument presented above in 3.7.1, based on the consideration that the dispute between HVY and the Russian Federation is not of a public law nature (para. 4.7.35). The Court of Appeal then, superfluously, assessed whether – if it is assumed that under Russian law arbitration is only possible for civil law disputes and that the present dispute is not of a civil law nature – arbitration under Article 26 ECT is 'inconsistent' with Russian law, and answered this question in the negative (paras. 4.7.36-4.7.58).
In the provisional assessment of the Supreme Court, these considerations of the Court of Appeal also relate to the interpretation and application of Russian law. On the basis of Article 79(1), opening words and (b) of the Judiciary Organisation Act, the Supreme Court cannot annul the Court of Appeal's judgments on account of violation of Russian law. This rule also bars reasoning complaints that cannot be assessed without also assessing the correctness of the Court of Appeal's decision on the substance and interpretation of Russian law. [12] Also considered in this light, the Supreme Court provisionally does not consider the probability that the complaints referred to above in 3.7.1 will succeed to be such that this justifies the suspension of the enforcement of the Yukos Awards.

3.8     Where the Russian Federation argues in its suspension application, with reference to complaints in part 2 of the ground for cassation, that the Court of Appeal considered (in para. 4.7.64) that 'the ECT makes it possible for shareholders to file claims that they are otherwise prevented from filing under Russian law' and that that would imply that the provisional application of Article 26 ECT is inconsistent with Russian law, in the provisional assessment of the Supreme Court the following applies.
In paras. 4.7.62-4.7.64, the Court of Appeal rejected the statement that HVY, as (former) shareholders of Yukos, cannot file a claim legal under Russian law in connection with damages inflicted upon the company, on three distinct grounds. Each of these three grounds can independently carry the rejection of the Russian Federation's statement. However, the suspension application does not show that each of these grounds is being challenged in cassation. The complaints referred to in the suspension application therefore already fail in the Supreme Court's provisional decision on account of a lack of interest.
Superfluously, the Supreme Court notes that the contested decision of the Court of Appeal is also about the Court of Appeal's interpretation and application of Russian law, so that, in view of Article 79(1), opening words and (b) of the Judiciary Organisation Act (see 3.7.2 above), the probability that these complaints will lead to cassation, even apart from the lack

---

[12] Supreme Court 6 September 2013, ECLI:NL:HR:2013:BZ9228, para. 3.15.5.



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

of interest, is provisionally not such that it justifies suspension of the enforcement of the Yukos Awards.

3.9     It follows from the foregoing that the Supreme Court provisionally decides that the complaints mentioned in the suspension application fail in so far as they are directed against the second independent ground, referred to in 3.6 above, for the Court of Appeal's decision that Article 26 ECT must be applied provisionally by the Russian Federation. As a result, the complaints referred to in the suspension application directed against the first independent ground referred to in 3.6 above do not require a provisional assessment.

*The terms 'investment' and 'investor'*

3.10.1  In the suspension application the Russian Federation has further invoked part 3 of the ground for cassation in the setting aside proceedings.
        The Russian Federation points out that part 3 of the ground for cassation argues that the Court of Appeal wrongly qualified HVY as 'foreign investors' as referred to in Article 26 ECT. According to the part of the ground for cassation, by doing so the Court of Appeal failed to recognise that HVY are letterbox companies, established and controlled by Russian nationals and which have not invested (foreign) capital in the Russian economy.
        In addition, the Russian Federation points to the argument in part 3 of the ground for cassation that, when interpreting Article 1(6) and (7) ECT, the Court of Appeal attributed insufficient weight to (i) the ordinary meaning of the terms 'investment' and 'investor', (ii) the object and purpose of the ECT and (iii) subsequent practice in this respect, and thus wrongly considered that HVY are 'investors' and made 'investments' as referred to in Article 1(6) and (7) ECT.

3.10.2  First of all, the Court of Appeal pointed out that the point of departure for the interpretation of Article 1(6) and (7) ECT is the text of the provisions and the ordinary meaning that accrues to it and that HVY, according to the text, have met the requirements set by Article 1 (6) and (7) ECT. In addition, according to the Court of Appeal, the requirement of Article 26 ECT that there is a dispute between a 'Contracting Party' (the Russian Federation) and investors from 'another Contracting Party' (HVY, companies under the laws of Cyprus and the Isle of Man) has also been satisfied. (para. 5.1.6)
        The Court of Appeal continues with the consideration that the ECT opts for 'the law of the country under the laws of which the investor is organised' to determine the nationality of an investor and that it follows neither from the context of Article 1 ECT or Article 26 ECT nor from the purpose of the Treaty that the drafters had the intention to impose further requirements on the foreign character of the investment or the investor, or the international character of the dispute (paras. 5.1.7.2-5.1.7.3). To this the Court of Appeal adds that there is no general principle of law according to which investment treaties do not provide protection to companies wholly controlled by nationals of the host country. (paras. 5.1.8.1-5.1.8.10). Finally, the Court of Appeal considers that there is insufficient basis to decide that Article 1(6) ECT must be understood to mean that the foreign investor must make an economic contribution to the host state (paras. 5.1.9.1-5.1.9.5).



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

3.10.3   These decisions do not provisionally reveal an incorrect interpretation of the law. The fact that the Russian Federation argues a different position on the interpretation of Article 26 ECT or Article 1 (6) and (7) ECT does not change this. Furthermore, the extensive assessments of the Court of Appeal are provisionally not incomprehensible, also in light of the arguments put forward in the suspension application on this point.

In view of this, in the provisional assessment of the Supreme Court, the probability that the complaints presented above in 3.10.1 will succeed – and that after referral this will lead to the setting aside of the Yukos Awards – is not such that this justifies the suspension of the enforcement of the Yukos Awards.

*Protection of purported illegal investments*

3.11.1   In its suspension application, the Russian Federation also invoked part 4 of the ground for cassation in the setting aside proceedings, which argues (i) that the Court of Appeal incorrectly interpreted the ECT with its decision (in para. 5.1.11.5) that the ECT does not require investments protected by the ECT to be made in accordance with the laws of the host state and (ii) that the Court of Appeal wrongly decided that illegal actions can only be relevant if they relate directly to the acquisition of the Yukos shares by HVY themselves.

3.11.2   The Court of Appeal considered (in paras. 5.1.11.1-5.1.11.5), in summary, that 'illegal conduct' at the time of or upon the making the investment under the ECT does not lead to a lack of jurisdiction on the part of the Tribunal (but may lead to the action being denied). The Court of Appeal subsequently considered (in paras. 5.1.11.6-5.1.11.9) that even if it must be assumed that 'unlawful conduct' at the time of or in making the investment under the ECT does lead to lack of jurisdiction of the Tribunal, this cannot benefit the Russian Federation because – in summary – the illegal acts invoked by the Russian Federation are too far removed from the transactions with which HVY acquired their shares in Yukos.

In the provisional assessment of the Supreme Court, the Court of Appeal thus gave two independent grounds for the decision that the illegality of HVY's investments alleged by the Russian Federation does not lead to lack of jurisdiction on the part of the Tribunal. It is also relevant that in the challenged considerations, the Court of Appeal only assesses whether the illegal conduct alleged by the Russian Federation leads to a lack of jurisdiction on the part of the Tribunal, and not whether the alleged illegal conduct should lead to the denial of HVY's claims. The Supreme Court provisionally decides that the probability that both these independently carrying grounds will not survive cassation and that, moreover, after referral this will lead to the setting aside of the Yukos Awards, is not such that it must lead to suspension of the enforcement.

*Intermediate conclusion*

3.12   It follows from the foregoing that the Supreme Court provisionally decides that the probability that the complaints against the Court of Appeal's decision that there is no reason to set aside the Yukos Awards on account of the lack of a valid arbitration agreement will succeed and that, furthermore, after referral this will lead to the setting aside of the Yukos Awards, is not such that this justifies suspension of the enforcement of the Yukos Awards.

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

*The Tribunal's mandate*

3.13.1 On the basis of Article 1065(1), opening words and (c) (old) DCCP, an arbitral award can be set aside if the arbitral tribunal has violated its mandate.

In this respect, the Russian Federation has referred in the suspension application to part 5 of the ground for cassation in the setting aside proceedings, which argues that the Court of Appeal (in paras. 6.3.2-6.3.3) rightly assumed that the Tribunal should have made a referral to the Russian tax authorities as referred to in Article 21(5) ECT and omitted to do so, but then wrongly decided that this violation of Article 21(5) ECT by the Tribunal does not justify the setting aside of the Yukos Awards. In addition, the Tribunal also wrongly failed to make a referral to the tax authorities of Cyprus and the United Kingdom as referred to in Article 21(5) ECT, so that the Court of Appeal's decision to the contrary (in para. 6.3.4) is incorrect, according to the Russian Federation. According to the Russian Federation, this latter decision by the Court of Appeal is also contrary to Articles 19 and 24 DCCP.

3.13.2 It is not evident from the suspension application that the decision of the Court of Appeal, that Article 1065 DCCP entails that no setting aside shall take place on the ground that the arbitral tribunal did not comply with its mandate if the departure from the mandate is not of a serious nature, is being challenged in cassation (para. 6.1.5). Nor is it evident from the suspension application that it has been challenged in cassation that it is not plausible that the Russian Federation suffered a disadvantage because the Tribunal failed to make a referral to the Russian tax authorities on the basis of Article 21(5) ECT. In this light, in the provisional decision of the Supreme Court, the probability of success of the complaint against the Court of Appeal's decision that the Tribunal's violation of Article 21 (5) ECT does not justify the setting aside of the Yukos Awards is insufficient to justify suspension of the enforcement.

3.13.3 With regard to the tax authorities of Cyprus and the United Kingdom, the Court of Appeal considered that the Tribunal did not have to make a referral to these tax authorities as referred to in Article 21 (5) ECT, because Article 21 (5) ECT only prescribes a referral to the 'relevant competent tax authority' if it concerns the question 'whether a tax constitutes an expropriation', and it has not been argued that tax measures taken by Cyprus or the United Kingdom constitute an expropriation (para. 6.3.4).

In the Supreme Court's provisional decision, this consideration of the Court of Appeal must be understood to mean that the Court of Appeal did not consider the tax authorities of Cyprus and the United Kingdom to be *relevant* tax authorities within the meaning of Article 21(5) ECT, and that this consideration by the Court of Appeal is not incorrect or incomprehensible in light of (i) the Court of Appeal's decision, which has not been challenged as such, that the dispute between the parties is not about whether tax measures of Cyprus or the United Kingdom constitute an expropriation and (ii) the circumstance that a defence directed at this was also raised by HVY before the Tribunal (see the Final Award, § 1419).



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

With this, the Supreme Court provisionally decides that the probability that this complaint will succeed – and that after referral this will lead to the setting aside of the Yukos Awards – is insufficient to justify the suspension of the enforcement.

*The composition of the Tribunal*

3.14.1   Based on Article 1065(1), opening words and (b) (old) DCCP, an arbitral award can be set aside if the arbitral tribunal is composed in violation of the applicable rules. In the suspension application, the Russian Federation invokes complaints from part 6 of the ground for cassation in the setting aside proceedings, which are directed against the rejection by the Court of Appeal of the Russian Federation's assertion that the arbitrators' delegation to assistant Valasek of part of their highest personal core task, namely the drafting of (parts of) the Final Award, must lead to the setting aside of the Yukos Awards.

3.14.2   In the suspension application, the Russian Federation firstly points out in that respect that the Court of Appeal (in para. 6.6.5) wrongly disregarded the Russian Federation's offer of proof in so far as it related to Valasek's contribution to the decision-making process. The Court of Appeal assumed by way of a presumption that Valasek indeed made significant contributions to the drafting of Chapters IX, X and XII of the Final Award by providing (draft) texts that the arbitrators incorporated, in whole or in part, in the arbitral awards (para. 6.6.5). However, the Court of Appeal also considered that it does not follow from this that the arbitrators left the decision-making to Valasek (para. 6.6.6). The latter decision is provisionally not incomprehensible. In the provisional assessment of the Supreme Court, the probability that the complaint directed at the passing of the Defendant's offer of proof, pertaining to the division of the drafting labour and Valasek's ensuing contribution to the decision-making process, will succeed – and that after referral this will lead to setting aside the Yukos Awards – is not such that this justifies suspension of enforcement.

3.14.3   Also with regard to the further arguments advanced in this respect in the suspension application with regard to the Court of Appeal's decisions on (i) the signing of the Final Awards and (ii) the failure to inform the parties in advance of Valasek's role, the Supreme Court provisionally decides that the probability that these complaints lead to the annulment of (one of) the judgments of the Court of Appeal is insufficient to justify suspension of the enforcement of the Yukos Awards.

*Arbitral award stating reasons*

3.15.1   On the basis of Article 1065(1), opening words and (d) (old) DCCP, an arbitral award can be set aside (*inter alia*) if the arbitral award does not state reasons. Setting aside an arbitral award on this ground only takes place if reasons are absent, which must be equated with the case in which, although reasons have been given, no valid explanation for the relevant decision can be discerned. [13]

---

[13] Supreme Court 22 December 2006, ECLI:NL:HR:2006:AZ1593, para. 3.3.



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

In the suspension application, the Russian Federation referred in this respect to complaints from part 7 of the ground for cassation in the setting aside proceedings directed at the Court of Appeal's decision on what are called the Mordovian shams.

3.15.2   The Court of Appeal rejected the Russian Federation's assertion that it is incomprehensible that the Tribunal decided that there was no evidence for the Mordovian shams.
To this end, the Court of Appeal first of all considered that the Tribunal did not mean in § 639 of the Final Award that evidence for the Mordovian shams was missing in the arbitration record, but that that evidence was lacking in the Russian tax record (paras. 8.4.13-8.4.15). In the event that the Tribunal did mean that there was no evidence for the Mordovian shams in the arbitration record, the Court of Appeal considered that § 639 does not support the Tribunal's decision in § 648 that the Russian Federation violated HVY's right to 'due process' when handling the tax record (para. 8.4.16).
According to the suspension application, the complaint is directed against the Court of Appeal's decision in para. 8.4.16 that this consideration is based on a misconception of what the Tribunal considers in § 648 about 'undue process', because this is nothing other than the lack of evidence of abuse of Mordovian shams alleged in § 639.
The Supreme Court provisionally decides that the two grounds upon which the Court of Appeal based its decision can each independently support the Court of Appeal's rejection of the Russian Federation's statement and that it cannot be said that a valid explanation for that rejection cannot be found in the Court of Appeal's reasoning.

*Public policy*

3.16   On the basis of Article 1065(1), opening words and (e) (old) DCCP, the arbitral award can be set aside (*inter alia*) if the award is contrary to public policy.

3.17.1   In the suspension application, the Russian Federation argues in this respect – with reference to part 1 of the ground for cassation in the setting aside proceedings – that the Court of Appeal wrongly decided that, since the accusations made by the Russian Federation HVY fall within the scope of the revocation ground of Article 1068(1) opening words and (a) (old) DCCP, these accusations cannot be used as the basis for a setting aside ground under Article 1065(1), opening words and (e) (old) DCCP.

3.17.2   The Court of Appeal took as its starting point that the accusations made by the Russian Federation HVY fall under the grounds for revocation of Article 1068(1), opening words and (a) DCCP (para. 5.6, interim judgment of 25 September 2018). That point of departure as such has not been disputed in cassation.
The Court of Appeal considered, *inter alia*, that a different period applies to instituting a claim for revocation than for instituting a claim for setting aside and that the competent court is different with regard to a claim for revocation than the one with regard to a claim for setting aside. According to the Court of Appeal, this could be circumvented if it were possible to seek the setting aside of the arbitral award based on Article 1065 (old) DCCP on the basis of statements covered by a ground for revocation of Article 1068 (old) DCCP, and that consequence would be unacceptable (para. 5.7, interim judgment).

**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

In the provisional assessment of the Supreme Court, the probability that the complaint presented above in 3.17.1 will succeed – and that this will subsequently lead to the setting aside of the Yukos Awards – does not justify a suspension of the enforcement.

3.18.1   Within the context of the ground for setting aside for breach of public policy, the suspension application refers to grounds 4 and 5 of the ground for cassation in the setting aside proceedings.

3.18.2   According to the suspension application, part 4 of the ground for cassation complains in this respect that the Court of Appeal failed to recognise that it is contrary to public policy that claims based on a treaty pertaining to illegally obtained or illegally exploited investments could be eligible for protection.
In this respect the Court of Appeal considered that it cannot be seen why the Tribunal's decision that these illegalities are not relevant for the award of HVY's claims because (i) only an illegality in the *making* of the investment is relevant for protection under the ECT, (ii) the alleged illegalities were committed by parties other than HVY and (iii) HVY acquired the shares in Yukos lawfully, would be contrary to public policy (para. 9.8.7).
The complaints directed against this decision provisionally do not have such a probability of success that this should lead to the suspension of the enforcement of the Yukos Awards.

3.18.3   The suspension application also argues – with reference to part 5 of the ground for cassation in the setting aside proceedings – that the Tribunal's decision not to hear the Russian tax authorities on the basis of Article 21(5) ECT points to an unacceptable partiality and that, moreover, the Russian Federation was deprived of the right to respond to this opinion. That is why the decision is contrary to public policy, according to the Russian Federation.
The Supreme Court does not consider the probability that these complaints will succeed – and that this will lead to the setting aside of the Yukos Awards after referral – to be such that this should result in suspension of the enforcement, if only because the suspension application does not show that it is being contested in the cassation proceedings that the Russian Federation did not suffer any disadvantage from this decision of the Tribunal (see above at 3.13.2).

*Conclusion with regard to the probability of success of the setting-aside claim*

3.19   It follows from the foregoing that, even if everything else put forward to that end in the suspension application is taken into account, the probability that the complaints referred to in the suspension application will lead to the annulment of (one of) the judgments of the Court of Appeal – and subsequently to the setting aside of the Yukos Awards – is, in the provisional assessment of the Supreme Court, not such that the enforcement of the Yukos Awards must be suspended.



**SWORN TRANSLATION**
The English text is a sworn translation of the
Dutch original. In case of any discrepancies, the
Dutch original shall prevail.

*Balance of interests*

3.20   With regard to the interests of the parties in the granting and denying of the suspension
application, the Supreme Court considers as follows.
The Supreme Court provisionally decides that it is sufficiently plausible that the enforcement
of the Yukos Awards involves a certain restitution risk. On the other hand, however, it has
also been made sufficiently plausible that collecting what the Russian Federation was
ordered to pay in the Yukos Awards is not straightforward and that it cannot be expected that
HVY will be able to collect the full amount of by now (more than) USD 57 billion or a
substantial part thereof during the remaining time of these proceedings. It is also relevant
that, provisionally, it is sufficiently plausible that HVY are entitled to payment by the Russian
Federation of a significant part of the amount of € 1,866,104,634.00, increased by interest,
awarded in the ECtHR's decision of 31 July 2014.[14] Taking all this into account, balancing
the interests does not lead to anything other than the conclusion to be reached below with
regard to the Russian Federation's suspension application.

*Conclusion regarding the Russian Federation's applications*

3.21   In view of the foregoing, the Supreme Court will deny the suspension application of the
enforcement. There is no longer any interest in assessing the application for a provisional
suspension until the Supreme Court has rendered a decision on the suspension application.

3.22   In light of the foregoing, the Supreme Court also sees insufficient grounds to order HVY to
provide security on the basis of Article 1066(5) (old) DCCP.

4      **Assessment of HVY's application**

In addition, as the Russian Federation's suspension application is denied, the Supreme
Court does not get to decide on the application made by HVY to have the Russian
Federation provide security in the event that the suspension application were to be granted.

5      **Decision**

The Supreme Court:
-        denies the Russian Federation's applications;
-        orders the Russian Federation to pay the costs of the proceedings, calculated to
date on HVY's side at € 899.07 in disbursements and € 1,800.00 in salary.

---

[14] ECtHR 31 July 2014, no. 14902/04 (*OAO Neftyanaya Kompaniya Yukos/Russia*).



**SWORN TRANSLATION**
**The English text is a sworn translation of the Dutch original. In case of any discrepancies, the Dutch original shall prevail.**

This decision was rendered by vice president V. van den Brink as president and justices A.M.J. van Buchem-Spapens and H.M. Wattendorff, and pronounced in public by justice M.J. Kroeze on <u>4 December 2020</u>.



**SWORN TRANSLATION**
**The English text is a sworn translation of the Dutch original. In case of any discrepancies, the Dutch original shall prevail.**

# SIGNING OF DECISION

ECLI:NL:HR:2020:1952

## Signatures

Tissuer, T.

Kroeze, mr. M.J.

[illegible signatures]

**Issued as an enforceable copy**
**The Clerk of the Supreme Court of the Netherlands**

**4 Dec 2020**

**[official stamp of the Supreme Court of the Netherlands]**

**[illegible signatures]**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| |
|---|
| HULLEY ENTERPRISES LTD., YUKOS UNIVERSAL LTD., and VETERAN PETROLEUM LTD., |
| *Petitioners,* |
| v. |
| THE RUSSIAN FEDERATION, |
| *Respondent.* |

Case No. 1:14-cv-01996-BAH

**<u>CERTIFICATION</u>**

I, Alexander Jan Boenish Burrough, translator for the English language sworn in before the District Court of The Hague, the Netherlands, and registered in the public register pursuant to the Dutch Act on Sworn Interpreters and Translators Wbtv (*Wet beëdigde tolken en vertalers "Wbtv"*) under number 1963, do hereby certify, to the best of my knowledge and belief, that the attached English translation is a true, complete, and accurate translation of the Dutch source document listed below:

- Decision of the Supreme Court of the Netherlands, dated 4 December 2020, Case Number 20/01892, in the matter of *The Russian Federation v. Hulley Enterprises Limited, Veteran Petroleum Limited and Yukos Universal Limited*

I have prepared this document, at the request of Bart Fleuren of De Brauw Blackstone Westbroek N.V., for submission to this Court and other legal proceedings in English. I affirm that I am competent to translate documents from Dutch to English and review such translations. I am not a relation to any of the parties in the source document.

A.J.B. Burrough, Sworn Translator

Dated:  December 10, 2020

APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1.  Country: THE NETHERLANDS
    This public document
2.  has been signed by **A.J.B. Burrough**
3.  acting in the capacity of sworn translator
4.  bears the seal/stamp of aforesaid translator

Certified

5.  in Amsterdam              6.  on 10-12-2020
7.  by the registrar of the district court of Amsterdam
8.  no.    055933

9.  Seal/stamp:              10. Signature:

                    H.H.S. Verhagen

_____

Signature, Notary Public

_____

Stamp, Notary Public



In naam van de Koning

# HOGE RAAD DER NEDERLANDEN

## CIVIELE KAMER

**Nummer**   20/01892
**Datum**    4 december 2020

## BESCHIKKING

In de zaak van

DE RUSSISCHE FEDERATIE,
zetelende te Moskou, Rusland,
VERZOEKSTER,
hierna: de Russische Federatie,
advocaten: R.S. Meijer en R.R. Verkerk,

tegen

1.  HULLEY ENTERPRISES LIMITED,
    gevestigd te Nicosia, Cyprus,
2.  VETERAN PETROLEUM LIMITED,
    gevestigd te Nicosia, Cyprus,
3.  YUKOS UNIVERSAL LIMITED,
    gevestigd te Douglas, Isle of Man,
VERWEERSTERS,
hierna: HVY en afzonderlijk ook Hulley, VPL en YUL,
advocaten: T. Cohen Jehoram, J. de Bie Leuveling Tjeenk en B.M.H. Fleuren.



20/01892

## 1.  Procesverloop

Voor het verloop van het geding tot dusver verwijst de Hoge Raad naar zijn tussenuitspraak in het bevoegdheidsincident van 25 september 2020, ECLI:NL:HR:2020:1511.

Daarna hebben HVY een verweerschrift ingediend in de hoofdzaak.

Op 30 oktober 2020 hebben partijen de zaak mondeling doen bepleiten aan de hand van pleitnotities, die zij hebben overgelegd.

De conclusie van de Advocaat-Generaal P. Vlas strekt tot afwijzing van de verzoeken van de Russische Federatie.

De advocaten van de Russische Federatie hebben schriftelijk op die conclusie gereageerd.

De Hoge Raad heeft kennisgenomen van de brief van HVY van 30 november 2020 en van de brief van de Russische Federatie van 30 november 2020.


## 2.  Uitgangspunten

2.1  Deze zaak gaat over de vraag of de tenuitvoerlegging van de tussen partijen gewezen arbitrale vonnissen op grond van art. 1066 lid 2 (oud) Rv moet worden geschorst totdat over de vordering tot vernietiging onherroepelijk is beslist. Daarnaast is aan de orde of een van partijen op grond van art. 1066 lid 5 (oud) Rv zekerheid moet stellen.

2.2  De Hoge Raad gaat uit van de volgende feiten.

(i)  HVY zijn, althans waren, aandeelhouder in Yukos Oil Company (hierna: Yukos).

(ii)  In 2004 hebben VPL, YUL en Hulley ieder afzonderlijk op de voet van art. 26 van de Energy Charter Treaty[1] (hierna: ECT of het Verdrag) een arbitrageprocedure aanhangig gemaakt tegen de Russische Federatie. De plaats van arbitrage was Den Haag. HVY hebben in die arbitrageprocedure – kort gezegd – gesteld dat de Russische Federatie hun investeringen in Yukos heeft onteigend en heeft nagelaten deze investeringen te beschermen, en gevorderd dat de Russische Federatie veroordeeld wordt tot betaling van schadevergoeding.

(iii)  Na drie afzonderlijke Interim Awards heeft het scheidsgerecht (hierna: het Scheidsgerecht) in drie afzonderlijke Final Awards de Russische Federatie onder meer veroordeeld om een schadevergoeding te betalen van USD 8.203.032.751,-- (aan VPL), van USD 1.846.000.687,-- (aan YUL) en van USD 39.971.834.360,-- (aan Hulley). De Interim Awards en de Final Awards worden hierna gezamenlijk aangeduid als de Yukos Awards.

(iv)  De Russische Federatie heeft op de voet van art. 1064 lid 2 (oud) Rv bij de rechtbank vernietiging gevorderd van de Yukos Awards. De rechtbank heeft de Yukos Awards vernietigd wegens het ontbreken van een geldige arbitrageovereenkomst.[2] Het hof heeft het vonnis van de rechtbank vernietigd en de vordering van de Russische Federatie tot vernietiging van de Yukos Awards afgewezen.[3]

---

[1]  Trb. 1995, 108.

[2]  Rechtbank Den Haag 20 april 2016, ECLI:NL:RBDHA:2016:4229.

[3]  Gerechtshof Den Haag 25 september 2018, ECLI:NL:GHDHA:2018:2476 en Gerechtshof Den Haag 18 februari 2020, ECLI:NL:GHDHA:2020:234. Zie voor een samenvatting van laatstgenoemd arrest de conclusie van de Advocaat-Generaal, onder 2.13-2.31.

20/01892

De Russische Federatie heeft cassatieberoep ingesteld tegen de arresten van het hof.[4] HVY hebben voorwaardelijk incidenteel cassatieberoep ingesteld. Op deze beroepen is nog niet beslist.

2.3   In dit geding verzoekt de Russische Federatie de Hoge Raad op de voet van art. 1066 (oud) Rv, kort gezegd:
  –   primair om (i) bij wijze van voorlopige schorsingsmaatregel HVY te bevelen alle lopende en toekomstige tenuitvoerleggingsmaatregelen met betrekking tot de Yukos Awards te schorsen totdat de Hoge Raad een beslissing zal hebben gegeven op het schorsingsverzoek op de voet van art. 1066 (oud) Rv, en (ii) de tenuitvoerlegging van de Yukos Awards op grond van art. 1066 (oud) Rv te schorsen totdat over de vordering tot vernietiging onherroepelijk is beslist,
  –   subsidiair om, indien het schorsingsverzoek mocht worden afgewezen, HVY te bevelen op grond van art. 1066 lid 5 (oud) Rv zekerheid te stellen.

2.4   Bij tussenbeschikking van 25 september 2020 heeft de Hoge Raad zich – naar aanleiding van een door HVY gevoerd bevoegdheidsverweer – bevoegd verklaard kennis te nemen van de op art. 1066 lid 2 en lid 5 (oud) Rv gegronde verzoeken van de Russische Federatie.[5]

2.5   HVY hebben vervolgens inhoudelijk verweer gevoerd tegen de verzoeken van de Russische Federatie, die volgens HVY moeten worden afgewezen. Voor het geval het schorsingsverzoek van de Russische Federatie wordt toegewezen, verzoeken HVY om de Russische Federatie te veroordelen tot het stellen van zekerheid.

2.6   Partijen hebben hun standpunten nader toegelicht tijdens het mondelinge pleidooi van 30 oktober 2020.

2.7   De conclusie van de Advocaat-Generaal strekt tot afwijzing van de verzoeken van de Russische Federatie. De advocaten van de Russische Federatie hebben schriftelijk op die conclusie gereageerd.

3.   **Beoordeling van de verzoeken van de Russische Federatie**

3.1   Op deze procedure is het Vierde Boek ('Arbitrage') van het Wetboek van Burgerlijke Rechtsvordering van toepassing zoals dat gold tot 1 januari 2015.[6]

3.2   De Hoge Raad zal hierna eerst ingaan op het primaire verzoek van de Russische Federatie tot schorsing van de tenuitvoerlegging van de Yukos Awards totdat over de vordering tot

---

4   Die cassatieprocedure is bij de Hoge Raad aanhangig onder zaaknummer 20/01595.
5   HR 25 september 2020, ECLI:NL:HR:2020:1511.
6   Art. IV lid 4 in verbinding met art. IV lid 2 van de Wet van 2 juni 2014 tot wijziging van Boek 3, Boek 6 en Boek 10 van het Burgerlijk Wetboek en het Vierde Boek van het Wetboek van Burgerlijke Rechtsvordering in verband met de modernisering van het Arbitragerecht (Stb. 2014, 200), in werking getreden op 1 januari 2015 (Stb. 2014, 254).

20/01892

vernietiging onherroepelijk is beslist. Daarna zal de Hoge Raad het subsidiaire verzoek van de Russische Federatie met betrekking tot het (doen) stellen van zekerheid behandelen.

3.3.1   Op de voet van art. 1065 lid 1 (oud) Rv kan, op de in die bepaling limitatief opgesomde gronden, vernietiging van een arbitraal vonnis worden gevorderd. Bij de beoordeling van de vernietigingsvordering dient de rechter – behoudens voor zover deze vordering erop is gebaseerd (i) dat een geldige overeenkomst van arbitrage ontbreekt[7] of (ii) dat in strijd       met hoor   en   wederhoor   is   gehandeld[8]   –   terughoudendheid   te   betrachten.   Een vernietigingsprocedure mag niet worden gebruikt als een verkapt hoger beroep. Het algemeen belang bij een effectief functionerende arbitrale rechtspleging brengt immers mee dat de burgerlijke rechter slechts in sprekende gevallen dient in te grijpen in arbitrale beslissingen.[9]
De vordering tot vernietiging schorst de tenuitvoerlegging van het arbitrale vonnis niet (art. 1066 lid 1 (oud) Rv). De rechter die omtrent de vernietiging oordeelt kan echter, indien daartoe gronden zijn, op verzoek van de meest gerede partij de tenuitvoerlegging schorsen totdat over de vordering tot vernietiging onherroepelijk is beslist (art. 1066 lid 2 (oud) Rv).

3.3.2   Het schorsingsverzoek op de voet van art. 1066 lid 2 (oud) Rv is gericht op het verkrijgen van een voorlopige voorziening. Bij de beslissing op dat schorsingsverzoek moet de rechter zich een voorlopig oordeel vormen over de vordering tot vernietiging van het arbitrale vonnis en daarnaast de belangen van partijen afwegen. Bij de vorming van dit voorlopig oordeel zal de rechter ervan moeten uitgaan dat de vordering tot vernietiging alleen kan slagen indien zich een vernietigingsgrond als bedoeld in art. 1065 (oud) Rv voordoet.[10]
Indien in de vernietigingsprocedure de rechter in de voorgaande instantie reeds een oordeel heeft gegeven over de vordering tot vernietiging, dient de rechter die beslist op het schorsingsverzoek met dat oordeel rekening te houden. Dat brengt met zich dat in het geval waarin de rechter in de vernietigingsprocedure de vordering tot vernietiging heeft afgewezen, de rechter die beslist op het schorsingsverzoek meer terughoudendheid dient te betrachten dan in het geval waarin door de rechter in de vernietigingsprocedure nog niet is beslist.

3.3.3   In deze zaak doet zich het geval voor dat in de vernietigingsprocedure door zowel de rechtbank als het hof reeds een oordeel is gegeven over de vordering tot vernietiging, en dat tegen de arresten van het hof, waarin de vordering tot vernietiging is afgewezen, cassatieberoep loopt (zie hiervoor in 2.2 onder (iv)).
Dat betekent dat de Hoge Raad zich in dit schorsingsgeding een voorlopig oordeel zal moeten vormen over de vraag of de in cassatie tegen het oordeel van het hof gerichte klachten – mede gelet op de beperkingen die zijn verbonden aan de controle in cassatie – tot vernietiging van (een van) de arresten van het hof zullen leiden. Daarnaast zal de Hoge Raad zich een voorlopig oordeel moeten vormen over de vraag of dat (uiteindelijk) tot een andere uitkomst in de vernietigingsprocedure – te weten: vernietiging van de Yukos Awards – zal leiden.

---

7   HR 26 september 2014, ECLI:NL:HR:2014:2837, rov. 4.2.
8   HR 25 mei 2007, ECLI:NL:HR:2007:BA2495, rov. 3.5.
9   HR 9 januari 2004, ECLI:NL:HR:2004:AK8380, rov. 3.5.2 en HR 17 januari 2003, ECLI:NL:HR:2003:AE9395, rov. 3.3.
10   Vgl. HR 21 maart 1997, ECLI:NL:HR:1997:ZC2314, rov. 3.5.

Pagina 4 van 14

20/01892

3.3.4   Bij het vormen van een voorlopig oordeel over de vraag of de in cassatie tegen het oordeel van het hof gerichte klachten tot vernietiging van (een van) de arresten van het hof zullen leiden, zal de Hoge Raad alleen acht slaan op cassatieklachten die in het verzoekschrift tot schorsing worden vermeld of waarnaar in dat verzoekschrift (voldoende specifiek) wordt verwezen.

3.4   De Hoge Raad zal zich hierna – met inachtneming van hetgeen hiervoor is overwogen – eerst een voorlopig oordeel vormen over de door de Russische Federatie ingestelde vordering tot vernietiging van het arbitrale vonnis. In dat verband komt achtereenvolgens aan de orde hetgeen de Russische Federatie in het verzoek tot schorsing heeft aangevoerd met betrekking tot (i) de geldigheid van de arbitrageovereenkomst, (ii) de opdracht aan het Scheidsgerecht, (iii) de samenstelling van het Scheidsgerecht, (iv) het niet met redenen omkleed zijn van de Yukos Awards en (v) de openbare orde. Vervolgens zal de Hoge Raad de belangen van partijen bij toe- of afwijzing van het schorsingsverzoek tegen elkaar afwegen.

*De geldigheid van de arbitrageovereenkomst*

3.5   Op grond van art. 1065 lid 1, aanhef en onder a, (oud) Rv kan vernietiging van het arbitraal vonnis plaatsvinden als een geldige overeenkomst tot arbitrage ontbreekt. In het schorsingsverzoek heeft de Russische Federatie in dit verband verwezen naar klachten van het cassatiemiddel in de vernietigingsprocedure die zijn gericht tegen het oordeel van het hof over (a) de uitleg en toepassing van de Limitation Clause van art. 45 lid 1 ECT, (b) de begrippen 'investering' en 'investeerder' en (c) de bescherming van illegale investeringen. Volgens de Russische Federatie moeten deze klachten leiden tot vernietiging van het oordeel van het hof dat geen aanleiding bestaat de Yukos Awards te vernietigen wegens het ontbreken van een geldige arbitrageovereenkomst.

*De uitleg en toepassing van de Limitation Clause*

3.6   Het hof heeft in rov. 4.4.1-4.5.48[11] een oordeel gegeven over de uitleg van de Limitation Clause van art. 45 lid 1 ECT en vervolgens in rov. 4.6.1 geoordeeld dat, uitgaande van deze uitleg, de voorlopige toepassing van art. 26 ECT (welke bepaling internationale arbitrage met betrekking tot de in art. 26 lid 1 ECT genoemde geschillen mogelijk maakt) niet in strijd is met de 'constitution, laws or regulations' van de Russische Federatie.
Vervolgens heeft het hof in rov. 4.6.2-4.7.58 overwogen dat, ook wanneer wordt uitgegaan van de andersluidende uitleg die de Russische Federatie aan de Limitation Clause geeft, art. 26 ECT door de Russische Federatie voorlopig moet worden toegepast.
De Hoge Raad is voorshands van oordeel dat deze beide gronden ieder het oordeel van het hof dat art. 26 ECT door de Russische Federatie voorlopig moet worden toegepast, zelfstandig dragen.

3.7.1   Met betrekking tot de hiervoor in 3.6 als tweede genoemde zelfstandig dragende grond beroept de Russische Federatie zich in het verzoekschrift tot schorsing op klachten uit onderdeel 2 van het cassatiemiddel in de vernietigingsprocedure, die zijn gericht tegen de verwerping door het

---

[11]   Waar de Hoge Raad in dit arrest verwijst naar rechtsoverwegingen van het hof, wordt – tenzij anders vermeld – verwezen naar het eindarrest van het hof van 18 februari 2020.

20/01892

hof van het betoog van de Russische Federatie (i) dat naar Russisch recht geschillen over publiekrechtelijke bevoegdheden niet voor arbitrage in aanmerking komen, (ii) dat om die reden de arbitrageprocedure tussen HVY en de Russische Federatie in strijd is met Russisch recht en (iii) dat in dat licht art. 26 ECT op grond van de Limitation Clause geen voorlopige toepassing vindt. De klachten betogen dat het hof bij de verwerping van dit betoog ten onrechte art. 26 ECT heeft aangemerkt als de grondslag voor arbitrage over publiekrechtelijke geschillen als de onderhavige en daarmee heeft verondersteld dat art. 26 ECT deel uitmaakte van de Russische interne rechtsorde, zodat sprake is van een cirkelredenering.

3.7.2   Het hof heeft het hiervoor in 3.7.1 weergegeven betoog van de Russische Federatie verworpen met de overweging dat het geschil tussen HVY en de Russische Federatie niet een geschil van publiekrechtelijke aard is (rov. 4.7.35). Het hof heeft vervolgens ten overvloede beoordeeld of – wanneer veronderstellenderwijs ervan wordt uitgegaan dat naar Russisch recht arbitrage slechts voor civielrechtelijke geschillen mogelijk is en het onderhavige geschil niet civielrechtelijk is – arbitrage op de voet van art. 26 ECT 'inconsistent' is met Russisch recht, en heeft die vraag ontkennend beantwoord (rov. 4.7.36-4.7.58).

Deze overwegingen van het hof hebben naar het voorlopige oordeel van de Hoge Raad mede betrekking op de uitleg en toepassing van Russisch recht. De Hoge Raad kan op grond van art. 79 lid 1, aanhef en onder b, RO de arresten van het hof niet vernietigen wegens schending van Russisch recht. Ook motiveringsklachten die zich niet laten beoordelen zonder daarbij ook de juistheid van het oordeel van het hof over de inhoud en uitleg van Russisch recht te betrekken, stuiten op deze bepaling af.[12] Mede in dat licht bezien, acht de Hoge Raad de kans dat de hiervoor in 3.7.1 genoemde klachten slagen, op voorhand niet zodanig dat dit schorsing van de tenuitvoerlegging van de Yukos Awards rechtvaardigt.

3.8   Waar de Russische Federatie in het verzoekschrift tot schorsing, onder verwijzing naar klachten van onderdeel 2, nog aanvoert dat het hof (in rov. 4.7.64) heeft overwogen dat 'de ECT vorderingen van aandeelhouders mogelijk maakt die aandeelhouders naar Russisch recht niet kunnen instellen' en dat daarmee gegeven zou zijn dat voorlopige toepassing van art. 26 ECT strijdig is met Russisch recht, geldt naar het voorlopige oordeel van de Hoge Raad het volgende.

Het hof heeft de stelling dat HVY als (voormalig) aandeelhouders van Yukos naar Russisch recht geen rechtsvordering kunnen instellen in verband met schade toegebracht aan de vennootschap, in rov. 4.7.62-4.7.64 op drie verschillende gronden verworpen. Elk van die drie gronden kan de verwerping van de stelling van de Russische Federatie zelfstandig dragen. Uit het verzoekschrift tot schorsing blijkt echter niet dat elk van die gronden in cassatie wordt bestreden. De klachten waarnaar in het verzoekschrift tot schorsing wordt verwezen, falen daarmee naar het voorlopige oordeel van de Hoge Raad reeds bij gebrek aan belang.

Ten overvloede merkt de Hoge Raad op dat het ook bij het hier bestreden oordeel van het hof gaat om de uitleg en de toepassing door het hof van Russisch recht, zodat gelet op art. 79 lid 1, aanhef en onder b, RO (zie hiervoor in 3.7.2) de kans dat deze klachten tot cassatie leiden, ook afgezien van het gebrek aan belang, op voorhand niet zodanig is dat dit schorsing van de tenuitvoerlegging van de Yukos Awards rechtvaardigt.

---

[12]   HR 6 september 2013, ECLI:NL:HR:2013:BZ9228, rov. 3.15.5.



20/01892

3.9     Uit het voorgaande volgt dat de Hoge Raad voorshands van oordeel is dat de in het
        verzoekschrift tot schorsing genoemde klachten niet slagen voor zover zij zijn gericht tegen de
        hiervoor in 3.6 genoemde tweede zelfstandig dragende grond voor het oordeel van het hof dat
        art. 26 ECT door de Russische Federatie voorlopig moet worden toegepast. Daarmee
        behoeven de in het verzoekschrift tot schorsing vermelde klachten die zijn gericht tegen de
        hiervoor in 3.6 genoemde eerste zelfstandig dragende grond, niet voorlopig te worden
        beoordeeld.

                *De begrippen 'investering' en 'investeerder'*

3.10.1   In het verzoekschrift tot schorsing heeft de Russische Federatie zich vervolgens beroepen op
         onderdeel 3 van het cassatiemiddel in de vernietigingsprocedure.
         De Russische Federatie wijst erop dat onderdeel 3 betoogt dat het hof HVY ten onrechte heeft
         aangemerkt als 'buitenlandse investeerders' zoals bedoeld in art. 26 ECT. Het hof heeft
         hiermee volgens het onderdeel miskend dat HVY brievenbusvennootschappen zijn, die door
         Russische onderdanen zijn opgericht en door Russische onderdanen worden gecontroleerd en
         die geen (buitenlands) kapitaal in de Russische economie hebben geïnvesteerd.
         Daarnaast wijst de Russische Federatie op het betoog in onderdeel 3 dat het hof bij de uitleg
         van art. 1 leden 6 en 7 ECT onvoldoende gewicht heeft toegekend aan (i) de normale betekenis
         van de begrippen 'investering' en 'investeerder', (ii) het voorwerp en doel van de ECT en (iii)
         de opvolgende statenpraktijk ter zake, en daarmee ten onrechte heeft overwogen dat HVY
         'investeerders' zijn en 'investeringen' deden als bedoeld in art. 1 leden 6 en 7 ECT.

3.10.2   Het hof heeft allereerst erop gewezen dat uitgangspunt voor de uitleg van art. 1 leden 6 en 7
         ECT is de tekst van de bepalingen en de gewone betekenis die aan de bewoordingen daarvan
         toekomt en dat HVY volgens de tekst hebben voldaan aan de eisen die art. 1 leden 6 en 7 ECT
         stelt. Daarnaast is volgens het hof ook voldaan aan de eis van art. 26 ECT dat sprake is van
         een geschil tussen een 'Contracting Party' (de Russische Federatie) en investeerders uit
         'another Contracting Party' (HVY, vennootschappen naar het recht van Cyprus en de Isle of
         Man). (rov. 5.1.6)
         Het hof vervolgt met de overweging dat in de ECT is gekozen voor 'het recht van het land
         volgens de wetten waarvan de investeerder is georganiseerd' om de nationaliteit van een
         investeerder te bepalen en dat noch uit de context van art. 1 ECT of art. 26 ECT, noch uit het
         doel van het Verdrag volgt dat de verdragsopstellers het oogmerk hadden nadere eisen te
         stellen aan het buitenlandse karakter van de investering of de investeerder, of aan het
         internationale karakter van het geschil (rov. 5.1.7.2-5.1.7.3). Daaraan voegt het hof toe dat er
         geen algemeen rechtsbeginsel is dat inhoudt dat investeringsverdragen geen bescherming
         verlenen aan vennootschappen die volledig onder zeggenschap staan van onderdanen van
         het gastland (rov. 5.1.8.1-5.1.8.10). Tot slot overweegt het hof dat onvoldoende houvast
         bestaat voor het oordeel dat art. 1 lid 6 ECT zo moet worden begrepen dat de buitenlandse
         investeerder een economische bijdrage moet leveren aan het gastland (rov. 5.1.9.1-5.1.9.5).

3.10.3   Deze oordelen geven niet op voorhand blijk van een onjuiste rechtsopvatting. Dat door de
         Russische Federatie over de uitleg van art. 26 ECT of art. 1 leden 6 en 7 ECT een ander
         standpunt wordt bepleit, maakt dit niet anders. De uitvoerige oordelen van het hof zijn voorts

20/01892

op voorhand, ook bezien in het licht van hetgeen in het verzoekschrift tot schorsing op dit punt is aangevoerd, niet onbegrijpelijk.

Gelet hierop is naar het voorlopige oordeel van de Hoge Raad de kans dat de hiervoor in 3.10.1 weergegeven klachten slagen – en dat dit na verwijzing tot vernietiging van de Yukos Awards zal leiden – niet zodanig dat dit schorsing van de tenuitvoerlegging van de Yukos Awards rechtvaardigt.

*Bescherming gestelde illegale investeringen*

3.11.1   De Russische Federatie heeft zich in het verzoekschrift tot schorsing voorts beroepen op onderdeel 4 van het cassatiemiddel in de vernietigingsprocedure, dat betoogt (i) dat het hof een onjuiste uitleg aan de ECT heeft gegeven met het oordeel (in rov. 5.1.11.5) dat de ECT niet vereist dat door de ECT beschermde investeringen in overeenstemming met het recht van het gastland worden gedaan en (ii) dat het hof ten onrechte heeft geoordeeld dat illegale handelingen alleen van belang kunnen zijn als ze rechtstreeks betrekking hebben op de verwerving van de Yukos-aandelen door HVY zelf.

3.11.2   Het hof heeft (in rov. 5.1.11.1-5.1.11.5), kort gezegd, overwogen dat 'illegaal handelen' ten tijde van of bij het doen van de investering onder de ECT niet leidt tot onbevoegdheid van het Scheidsgerecht (maar mogelijk wel tot een ontzegging van de vorderingen). Vervolgens heeft het hof (in rov. 5.1.11.6-5.1.11.9) overwogen dat ook wanneer moet worden aangenomen dat 'illegaal handelen' ten tijde van of bij het doen van de investering onder de ECT wel leidt tot onbevoegdheid van het Scheidsgerecht, dit de Russische Federatie niet kan baten omdat – kort gezegd – de illegale handelingen waarop door de Russische Federatie een beroep is gedaan, in een te ver verwijderd verband staan tot de transacties waarmee HVY hun aandelen in Yukos hebben verworven.

Naar het voorlopige oordeel van de Hoge Raad heeft het hof hiermee twee zelfstandig dragende gronden gegeven voor het oordeel dat de door de Russische Federatie gestelde illegaliteit van de investeringen van HVY niet leidt tot onbevoegdheid van het Scheidsgerecht. Van belang is verder dat het hof in de bestreden overwegingen alleen beoordeelt of het door de Russische Federatie gestelde illegaal handelen leidt tot onbevoegdheid van het Scheidsgerecht, en niet of het gestelde illegaal handelen moet leiden tot afwijzing van de vorderingen van HVY. De Hoge Raad is voorshands van oordeel dat de kans dat deze beide zelfstandig dragende gronden in cassatie geen stand zullen houden en dat dit bovendien na verwijzing tot vernietiging van de Yukos Awards zal leiden, niet zodanig is dat dit tot schorsing van de tenuitvoerlegging moet leiden.

*Tussenconclusie*

3.12   Uit het voorgaande volgt dat de Hoge Raad voorshands van oordeel is dat de kans dat de klachten tegen het oordeel van het hof dat er geen aanleiding bestaat de Yukos Awards te vernietigen wegens het ontbreken van een geldige overeenkomst van arbitrage slagen en dat dit bovendien na verwijzing tot vernietiging van de Yukos Awards zal leiden, niet zodanig is dat dit schorsing van de tenuitvoerlegging van de Yukos Awards rechtvaardigt.



Pagina 8 van 14

20/01892

*De opdracht aan het Scheidsgerecht*

3.13.1   Op grond van art. 1065 lid 1, aanhef en onder c, (oud) Rv kan vernietiging van een arbitraal vonnis plaatsvinden als het scheidsgerecht zich niet aan zijn opdracht heeft gehouden.
De Russische Federatie heeft in dit verband in het schorsingsverzoek verwezen naar onderdeel 5 van het cassatiemiddel in de vernietigingsprocedure, dat betoogt dat het hof (in rov. 6.3.2-6.3.3) terecht heeft aangenomen dat het Scheidsgerecht de Russische belastingautoriteiten om het in art. 21 lid 5 ECT bedoelde advies had moeten vragen en dat heeft nagelaten, maar vervolgens ten onrechte heeft geoordeeld dat deze schending van art. 21 lid 5 ECT door het Scheidsgerecht niet de vernietiging van de Yukos Awards rechtvaardigt. Het Scheidsgerecht heeft daarnaast ook ten onrechte nagelaten de belastingautoriteiten van Cyprus en het Verenigd Koninkrijk om het in art. 21 lid 5 ECT bedoelde advies te vragen, zodat het andersluidende oordeel van het hof (in rov. 6.3.4) onjuist is, aldus de Russische Federatie. Dit laatstgenoemd oordeel van het hof is volgens de Russische Federatie ook in strijd met art. 19 en 24 Rv.

3.13.2   Uit het verzoekschrift tot schorsing blijkt niet dat in cassatie is bestreden het oordeel van het hof dat in art. 1065 Rv ligt besloten dat geen vernietiging plaatsvindt op de grond dat het scheidsgerecht zijn opdracht heeft geschonden, indien het schenden van de opdracht niet van ernstige aard is (rov. 6.1.5). Evenmin blijkt uit het verzoekschrift tot schorsing dat in cassatie is bestreden dat niet aannemelijk is dat de Russische Federatie nadeel heeft ondervonden doordat het Scheidsgerecht heeft nagelaten de Russische belastingautoriteiten het op grond van art. 21 lid 5 ECT bedoelde advies te vragen. In dit licht bezien is naar het voorlopige oordeel van de Hoge Raad de kans van slagen van de klacht tegen het oordeel van het hof dat de schending van art. 21 lid 5 ECT door het Scheidsgerecht niet de vernietiging van de Yukos Awards rechtvaardigt, onvoldoende om schorsing van de tenuitvoerlegging te rechtvaardigen.

3.13.3   Met betrekking tot de belastingautoriteiten van Cyprus en het Verenigd Koninkrijk heeft het hof overwogen dat het Scheidsgerecht deze belastingautoriteiten niet om het in art. 21 lid 5 ECT bedoelde advies hoefde te vragen, omdat art. 21 lid 5 ECT het vragen van dergelijk advies slechts voorschrijft ten aanzien van de 'relevant competent tax authority' indien het gaat om de vraag 'whether a tax constitutes an expropriation', en niet is aangevoerd dat belastingmaatregelen van Cyprus of het Verenigd Koninkrijk een onteigening inhouden (rov. 6.3.4).
Naar het voorlopige oordeel van de Hoge Raad moet deze overweging van het hof aldus worden begrepen dat het hof de belastingautoriteiten van Cyprus en het Verenigd Koninkrijk niet heeft aangemerkt als *relevante* belastingautoriteiten in de zin van art. 21 lid 5 ECT, en is die overweging van het hof niet onjuist of onbegrijpelijk in het licht van (i) het als zodanig onbestreden oordeel van het hof dat het geschil tussen partijen niet erom gaat of belastingmaatregelen van Cyprus of het Verenigd Koninkrijk een onteigening inhouden en (ii) de omstandigheid dat een hierop gericht verweer door HVY ten overstaan van het Scheidsgerecht ook is gevoerd (zie de Final Award, § 1419).

20/01892

Daarmee is de Hoge Raad voorshands van oordeel dat de kans dat deze klacht slaagt – en dat dit na verwijzing tot vernietiging van de Yukos Awards zal leiden –, onvoldoende is om schorsing van de tenuitvoerlegging te rechtvaardigen.

*De samenstelling van het Scheidsgerecht*

3.14.1   Op grond van art. 1065 lid 1, aanhef en onder b, (oud) Rv kan vernietiging van een arbitraal vonnis plaatsvinden als het scheidsgerecht in strijd met de daarvoor geldende regels is samengesteld. In het schorsingsverzoek beroept de Russische Federatie zich op klachten uit onderdeel 6 van het cassatiemiddel in de vernietigingsprocedure, die zich richten tegen de verwerping door het hof van de stelling van de Russische Federatie dat het delegeren door de arbiters aan assistent Valasek van een deel van hun hoogstpersoonlijke kerntaak, namelijk het concipiëren van (delen van) de Final Award, moet leiden tot vernietiging van de Yukos Awards.

3.14.2   In het verzoekschrift tot schorsing wijst de Russische Federatie in dat verband allereerst erop dat het hof (in rov. 6.6.5) ten onrechte voorbij is gegaan aan het bewijsaanbod van de Russische Federatie voor zover dat betrekking had op de bijdrage van Valasek aan het besluitvormingsproces.
Het hof heeft veronderstellenderwijs aangenomen dat Valasek grote bijdragen heeft geleverd aan het concipiëren van de hoofdstukken IX, X en XII van de Final Award, doordat hij daartoe (concept)teksten heeft aangeleverd die de arbiters geheel of gedeeltelijk in de arbitrale vonnissen hebben verwerkt (rov. 6.6.5). Het hof heeft echter ook overwogen dat hieruit niet volgt dat de arbiters de besluitvorming aan Valasek hebben overgelaten (rov. 6.6.6). Laatstgenoemd oordeel is op voorhand niet onbegrijpelijk. Naar het voorlopig oordeel van de Hoge Raad is de kans dat de tegen het passeren van het, op de verdeling van het concipieerwerk en de daaruit voortvloeiende bijdrage van Valasek aan het besluitvormingsproces betrekking hebbende, bewijsaanbod gerichte klacht slaagt – en dat dit na verwijzing tot vernietiging van de Yukos Awards zal leiden –, daarmee niet zodanig dat dit schorsing van de tenuitvoerlegging rechtvaardigt.

3.14.3   Ook met betrekking tot hetgeen in dit verband in het verzoekschrift tot schorsing nog is aangevoerd ten aanzien van de oordelen van het hof over (i) de ondertekening van de Final Awards en (ii) het nalaten partijen op voorhand in te lichten over de rol van Valasek, is de Hoge Raad voorshands van oordeel dat de kans dat deze klachten leiden tot vernietiging van (een van) de arresten van het hof onvoldoende is om schorsing van de tenuitvoerlegging van de Yukos Awards te rechtvaardigen.

*Met redenen omkleed arbitraal vonnis*

3.15.1   Op grond van art. 1065 lid 1, aanhef en onder d, (oud) Rv kan vernietiging van een arbitraal vonnis plaatsvinden (onder meer) als het arbitrale vonnis niet met redenen is omkleed. Vernietiging van een arbitraal vonnis op deze grond vindt slechts plaats wanneer een motivering ontbreekt, waarmee op een lijn moet worden gesteld het geval waarin weliswaar een motivering



20/01892

is gegeven, maar daarin enige steekhoudende verklaring voor de desbetreffende beslissing niet valt te onderkennen.[13]

In het schorsingsverzoek heeft de Russische Federatie in dit verband verwezen naar klachten uit onderdeel 7 van het cassatiemiddel in de vernietigingsprocedure, die zijn gericht tegen het oordeel van het hof over de zogeheten Mordovische shams.

3.15.2   Het hof heeft de stelling van de Russische Federatie dat onbegrijpelijk is dat het Scheidsgerecht heeft geoordeeld dat er geen bewijs was voor de Mordovische shams, verworpen.

Het hof heeft hiertoe allereerst overwogen dat het Scheidsgerecht in § 639 van de Final Award niet heeft bedoeld dat bewijs voor de Mordovische shams ontbrak in het arbitragedossier, maar dat dat bewijs ontbrak in het Russische belastingdossier (rov. 8.4.13-8.4.15). Voor het geval het Scheidsgerecht wel heeft bedoeld dat het bewijs voor de Mordovische shams in het arbitragedossier ontbrak, heeft het hof overwogen dat § 639 niet dragend is voor het oordeel van het Scheidsgerecht in § 648 dat de Russische Federatie bij de behandeling van het belastingdossier het recht van HVY op 'due process' heeft geschonden (rov. 8.4.16).

Tegen het oordeel van het hof in rov. 8.4.16 is blijkens het schorsingsverzoek de klacht gericht dat deze overweging berust op een onbegrip van wat het Scheidsgerecht in § 648 over 'undue process' overweegt, omdat dit niets anders is dan het in § 639 beweerde gebrek aan bewijs over misbruik van Mordovische shams.

De Hoge Raad is voorshands van oordeel dat de beide gronden die het hof aan zijn oordeel ten grondslag heeft gelegd, ieder zelfstandig de verwerping door het hof van de stelling van de Russische Federatie kunnen dragen en dat niet kan worden gezegd dat in de overwegingen van het hof geen steekhoudende verklaring voor die verwerping valt te onderkennen.

*Openbare orde*

3.16   Op grond van art. 1065 lid 1, aanhef en onder e, (oud) Rv kan vernietiging van het arbitraal vonnis plaatsvinden (onder meer) als het vonnis in strijd is met de openbare orde.

3.17.1   In het verzoekschrift tot schorsing stelt de Russische Federatie in dit verband – onder verwijzing naar onderdeel 1 van het cassatiemiddel in de vernietigingsprocedure – dat het hof ten onrechte heeft geoordeeld dat, nu de verwijten die de Russische Federatie HVY maakt vallen onder de herroepingsgrond van art. 1068 lid 1, aanhef en onder a, (oud) Rv, deze verwijten niet ten grondslag kunnen worden gelegd aan een beroep op een vernietigingsgrond van art. 1065 lid 1, aanhef en onder e, (oud) Rv.

3.17.2   Het hof heeft tot uitgangspunt genomen dat de verwijten die de Russische Federatie HVY maakt, vallen onder de herroepingsgrond van art. 1068 lid 1, aanhef en onder a, Rv (rov. 5.6, tussenarrest 25 september 2018). Dat uitgangspunt is als zodanig in cassatie niet bestreden. Het hof heeft onder meer overwogen dat voor het instellen van een vordering tot herroeping een andere termijn geldt dan voor het instellen van een vordering tot vernietiging en dat de bevoegde rechterlijke instantie ten aanzien van een vordering tot herroeping een andere is dan

---

[13]   HR 22 december 2006, ECLI:NL:HR:2006:AZ1593, rov. 3.3.



Pagina 11 van 14

20/01892

die ten aanzien van een vordering tot vernietiging. Volgens het hof zou dit kunnen worden omzeild indien het mogelijk zou zijn op grond van art. 1065 (oud) Rv vernietiging van het arbitrale vonnis te vorderen op grond van stellingen die vallen onder een herroepingsgrond van art. 1068 (oud) Rv, en zou die consequentie onaanvaardbaar zijn (rov. 5.7, tussenarrest).

Naar het voorlopige oordeel van de Hoge Raad rechtvaardigt de kans dat de hiervoor in 3.17.1 weergegeven klacht slaagt – en dat dit vervolgens tot vernietiging van de Yukos Awards zal leiden –, niet een schorsing van de tenuitvoerlegging.

3.18.1   In het kader van de vernietigingsgrond strijd met de openbare orde wijst het verzoekschrift tot schorsing nog op de onderdelen 4 en 5 van het cassatiemiddel in de vernietigingsprocedure.

3.18.2   Onderdeel 4 klaagt in dit verband volgens het verzoekschrift tot schorsing dat het hof heeft miskend dat het in strijd is met de openbare orde dat op een verdrag gebaseerde vorderingen ter zake van illegaal verkregen of illegaal geëxploiteerde investeringen voor bescherming in aanmerking zouden kunnen komen.

Het hof heeft hieromtrent overwogen dat niet valt in te zien dat in strijd met de openbare orde is het oordeel van het Scheidsgerecht dat de door de Russische Federatie gestelde illegaliteiten niet relevant zijn voor de toewijzing van de vorderingen van HVY omdat (i) alleen een illegaliteit bij het *verrichten* van de investering relevant is voor de bescherming onder de ECT, (ii) de gestelde illegaliteiten door anderen dan HVY zijn begaan en (iii) HVY de aandelen in Yukos rechtsgeldig hebben verworven (rov. 9.8.7).

De tegen dit oordeel gerichte klachten hebben niet op voorhand een zodanige kans van slagen dat dit tot schorsing van de tenuitvoerlegging van de Yukos Awards moet leiden.

3.18.3   Het verzoekschrift tot schorsing betoogt verder – onder verwijzing naar onderdeel 5 van het cassatiemiddel in de vernietigingsprocedure – dat de beslissing van het Scheidsgerecht om de Russische belastingautoriteiten niet op de voet van art. 21 lid 5 ECT te horen, wijst op een onaanvaardbare partijdigheid en dat daarmee bovendien de Russische Federatie het recht is ontnomen op dit advies te reageren. Daarom is de beslissing in strijd met de openbare orde, aldus de Russische Federatie.

De Hoge Raad acht de kans dat deze klachten slagen – en dat dit na verwijzing tot vernietiging van de Yukos Awards zal leiden – niet zodanig dat dit in schorsing van de tenuitvoerlegging moet resulteren, reeds omdat uit het verzoekschrift tot schorsing niet blijkt dat in de cassatieprocedure wordt bestreden dat de Russische Federatie geen nadeel heeft ondervonden van deze beslissing van het Scheidsgerecht (zie hiervoor in 3.13.2).

*Slotsom ten aanzien van de kans van slagen van de vernietigingsvordering*

3.19   Uit het voorgaande volgt dat, ook als al hetgeen daartoe verder in het verzoek tot schorsing is aangevoerd in aanmerking wordt genomen, de kans dat de in het schorsingsverzoek genoemde klachten leiden tot vernietiging van (een van) de arresten van het hof – en vervolgens tot vernietiging van de Yukos Awards – naar het voorlopige oordeel van de Hoge Raad niet zodanig is dat de tenuitvoerlegging van de Yukos Awards moet worden geschorst.



Pagina 12 van 14

20/01892

*Belangenafweging*

3.20   Over de belangen van partijen bij toe- en afwijzing van het schorsingsverzoek overweegt de
Hoge Raad als volgt.
De Hoge Raad is voorshands van oordeel dat voldoende aannemelijk is dat de
tenuitvoerlegging van de Yukos Awards enig restitutierisico met zich brengt. Hier staat echter
tegenover dat ook voldoende aannemelijk is gemaakt dat de inning van hetgeen waartoe de
Russische Federatie in de Yukos Awards is veroordeeld, niet eenvoudig is en dat niet valt te
verwachten dat HVY gedurende de resterende looptijd van deze procedure het volledige
bedrag van inmiddels (meer dan) 57 miljard USD of een aanzienlijk deel daarvan zal kunnen
innen. Verder is van belang dat voorshands voldoende aannemelijk is dat HVY op grond van
de uitspraak van het EHRM van 31 juli 2014[14] recht hebben op betaling door de Russische
Federatie van een aanzienlijk deel van het in die uitspraak toegewezen bedrag van
€ 1.866.104.634,--, vermeerderd met rente. Een en ander in aanmerking nemend, leidt een
afweging van belangen niet tot een andere dan de hierna ten aanzien van het
schorsingsverzoek van de Russische Federatie te bereiken slotsom.

*Slotsom ten aanzien van de verzoeken van de Russische Federatie*

3.21   Gelet op het voorgaande, zal de Hoge Raad het verzoek tot schorsing van de tenuitvoerlegging
afwijzen. Bij behandeling van het verzoek tot voorlopige schorsing totdat de Hoge Raad een
beslissing zal hebben gegeven op het schorsingsverzoek, bestaat geen belang meer.

3.22   In het licht van het voorgaande ziet de Hoge Raad eveneens onvoldoende aanleiding om HVY
op grond van art. 1066 lid 5 (oud) Rv te bevelen zekerheid te (doen) stellen.

**4.      Beoordeling van het verzoek van HVY**

Nu het verzoek tot schorsing van de Russische Federatie wordt afgewezen, komt de Hoge
Raad voorts niet toe aan het – voor het geval het verzoek tot schorsing zou worden toegewezen
– door HVY gedane verzoek om de Russische Federatie zekerheid te doen stellen.

**5.      Beslissing**

De Hoge Raad:
-   wijst de verzoeken van de Russische Federatie af;
-   veroordeelt de Russische Federatie in de kosten van het geding, tot op heden aan de zijde
van HVY begroot op € 899,07 aan verschotten en € 1.800,-- voor salaris.

---

[14]   EHRM 31 juli 2014, nr. 14902/04 (*OAO Neftyanaya Kompaniya Yukos/Rusland*).



20/01892

Deze beschikking is gegeven door de vicepresident V. van den Brink als voorzitter en de raadsheren A.M.J. van Buchem-Spapens en H.M. Wattendorff, en in het openbaar uitgesproken door de raadsheer M.J. Kroeze op 4 december 2020.



20/01892

# Ondertekening Beschikking

ECLI:NL:HR:2020:1952

## Handtekeningen

Tisseur, T.

Kroeze, mr. M.J.



Uitgegeven voor grosse

De Griffier van de Hoge Raad der Nederlanden

- 4 DEC. 2020

