UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HULLEY ENTERPRISES LTD., YUKOS UNIVERSAL LTD., AND VETERAN PETROLEUM LTD., <br><br> *Petitioners*, <br><br> v. <br><br> THE RUSSIAN FEDERATION, <br><br> *Respondent*. | Case No. 1:14-cv-01996-BAH <br><br> Judge Beryl A. Howell |

**RESPONDENT'S PROPOSAL AS TO THE
SCHEDULE OF THIS COURT'S FUTURE PROCEEDINGS**

Respondent hereby respectfully submits this proposal concerning the Court's instruction for the parties to "confer and submit a proposed schedule governing future proceedings in this matter" under the Order (ECF 275) of November 17, 2023.

As detailed below, Respondent proposes that the Court extend the deadline for the parties' submissions concerning the potential scheduling issues until **January 18, 2024**, unless this Court is divested of jurisdiction by Respondent's filing of a timely Notice of Appeal—for which the applicable deadline falls on December 18, 2023.

Fundamentally, any discussion of a briefing schedule is premature at the present moment, given that this Court would be divested of jurisdiction during the pendency of any interlocutory appeal concerning jurisdictional issues arising under the Foreign Sovereign Immunities Act ("FSIA) and collateral order doctrine. *See* 28 U.S.C. § 1291; *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 352 n.3 (D.C. Cir. 1997) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

If no interlocutory appeal is pursued, then the extended deadline would also permit the parties to evaluate and properly negotiate the key issues arising from the complex procedural posture (*e.g.*, the motions recently denied "without prejudice" by this Court, at ECF 244, 259-3) and the significant remaining overlap between this U.S. litigation and the still-pending Amsterdam litigation.  The extension would also accommodate the intervening holidays according to both the U.S. and Russian calendars.

Finally, this additional time would allow Respondent to study and respond adequately to the novel—and apparently unprecedented—theory of "waiver" that Petitioners have now raised **<u>for the first time</u>** in their submission **<u>after 5:00 PM this evening</u>**.  Significantly, Petitioners had not previously raised this legal theory at any point during the past week of correspondence with Respondent (*see* **<u>Annex A</u>**).  Petitioners' new theory also appears to raise novel issues concerning a potential waste of judicial resources (*i.e.*, in the event that the D.C. Circuit potentially reverses this Court's ruling on jurisdiction).  Here, the parties have yet to brief a significant number of issues arising under the 1958 New York Convention, and Respondent cannot be compelled to address those issues—nor would addressing those issues be an efficient use of judicial resources—while the D.C. Circuit remains seized of the FSIA issues.  Moreover, and in any event, Petitioners' new theory is also directly contrary to Petitioners' own previous statements to this Court with respect to the jurisdictional consequences of a Notice of Appeal, as further detailed below.

**I.      Jurisdictional Effect of an Interlocutory Appeal Under the FSIA**

Respectfully, an interlocutory appeal of the FSIA issues to the D.C. Circuit would deprive this Court of jurisdiction <u>over the entire case</u>, including any further order concerning a briefing schedule.  Petitioners' argument to the contrary must be rejected for multiple reasons.

*First*, whatever the merits of their new argument, Petitioners are judicially estopped from reversing their original position on the same issue. The principle of judicial estoppel "prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in an earlier proceeding." *Data Mt. Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 125 (D.D.C. 2010).

Here, Petitioners are now asserting that Respondent's interlocutory appeal in relation to "the Russian Federation's claim of sovereign immunity" would "not bar this Court from entering a scheduling order to complete briefing on all the *other* aspects of this case." Pet'rs' Proposal 2-3 (ECF 277). This is directly contrary to Petitioners' earlier position regarding the jurisdictional effects of an interlocutory appeal.

In their previous submissions to this Court, Petitioners had conceded unequivocally—and correctly—that "the Russian Federation has the right to an interlocutory appeal of this Court's denial of sovereign immunity," which "would temporarily remove this Court's jurisdiction over the remaining non-jurisdictional defenses." *See, e.g.*, Pet'rs' Opp'n to Mot. to Stay 1-2, 18 (ECF 204) (emphasis added). Petitioners are therefore now judicially estopped from taking the opposite position in the present instance.

*Second*, and in any event, Petitioners are wrong on the substance of their argument. Specifically, Petitioners suggest that the only "aspects of the case" before the D.C. Circuit are the narrow questions concerning "the Russian Federation's claim of sovereign immunity." Pet'rs' Proposal 2-3 (ECF 277). According to Petitioners, "[a]ny potential appeal of that issue, even if nonfrivolous, would not bar this Court from entering a scheduling order to complete briefing on all the other aspects of this case." *Id.*

This is contrary to the D.C. Circuit's explicit precedent concerning appeal of FSIA issues. "A district court's denial of a foreign state's motion to dismiss on grounds of sovereign immunity

3

is immediately appealable. . . . Because an appeal properly pursued from the district court's order divests the district court of control over those aspects of the case on appeal . . . <u>exclusive jurisdiction to resolve the threshold issue</u> this case presents <u>vests in [the appellate court]</u>, and the district court <u>may not proceed to trial until the appeal is resolved</u>." *Princz v. Fed. Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (holding that a stay of the district court's proceedings was unnecessary, since the district court was anyway divested of jurisdiction) (emphasis added).

Accordingly, an appeal under the FSIA not only divests this Court of jurisdiction to further consider immunity issues, but also "jurisdiction <u>over plaintiffs' remaining claims</u>." *De Csepel v. Republic of Hungary*, No. 10-cv-1261-ESH, 2011 U.S. Dist. LEXIS 150696, at *9-10 (D.D.C. Nov. 30, 2011) (internal quotation marks and citation omitted) (emphasis added); *see also Ungar v. PLO*, 402 F.3d 274, 292-94 (1st Cir. 2005) (explaining that "a district court's denial of a motion to dismiss a complaint on the ground of foreign sovereign immunity is immediately appealable" and "such an appeal ordinarily <u>divests the district court of jurisdiction to proceed with the litigation</u> pending its resolution") (emphasis added).

Applying this principle, another judge of this District has also concluded that it lacked jurisdiction to order collateral relief while FSIA issues were pending on appeal—such as third-party subpoenas for preservation of evidence. *Azima v. Rak Inv. Auth.*, No. 16-cv-1948-KBJ, 2018 U.S. Dist. LEXIS 225192, at *5-7 (D.D.C. Nov. 5, 2018).  As this Court explained, where a "pending appeal involves the threshold issue of foreign sovereign immunity," the district court is "divested of jurisdiction <u>over the entire case</u>" until the appellate court issues the mandate." *Id.* (emphasis added).

Accordingly, Petitioners' incorrect contention that this Court is only partially divested of jurisdiction must be rejected.

4

***Third***, and finally, Petitioners now belatedly assert—for the first time in eight years and late in the day on this Court's procedural deadline—that Respondent's submission of a Motion to Deny Confirmation (ECF 24) has purportedly operated as a "waive[r]" by "litigation conduct." Pet'rs' Proposal 2-3 (ECF 277). Unsurprisingly, Petitioners do not cite any previous instance where such a partial "waive[r]" has occurred in the context of an appeal based on FSIA defenses. Nor do Petitioners have any coherent theory for how Respondent might have waived immunity from a briefing schedule, and yet preserved immunity from this Court's jurisdiction to "enter[] a final judgment" while an interlocutory appeal is pending. *See* **Annex A**.

Fundamentally, Petitioners fail to understand that the "filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over aspects of the case involved in the appeal." *Nat'l Black Police Ass'n*, 108 F.3d at 352 n.3 (quoting *Griggs*, 459 U.S. at 58.

Accordingly, any "appeal from denial of motion to dismiss on grounds of sovereign immunity divests" the lower court of jurisdiction over the "entire case" automatically. *Bombardier Corp. v. Amtrak*, No. 02-7125, 2002 U.S. App. LEXIS 25858, at *2 (D.C. Cir. Dec. 12, 2002) (citing *Princz*, 998 F.2d at 1). In this regard, Petitioners do not identify any precedent whatsoever for the assertion that this transfer of exclusive "jurisdiction" and "control" from this Court to the D.C. Circuit may be affected—wholly or partially—by any kind of waiver.

To the contrary, the only case cited by Petitioners on this category of issues is *Process & Industrial Developments v. Federal Republic of Nigeria* ("*P&ID*"), 962 F.3d 576 (D.C. Cir. 2020). The *P&ID* case, however, did not address this question even in dicta. To the contrary, that case evaluated only (1) whether a foreign State could be compelled to brief the merits while the FSIA issues remained unresolved and (2) whether such an improper scheduling order's violation of the FSIA could be immediately appealed under the collateral-order doctrine. *See*

*generally id.* The *P&ID* case thus did not evaluate whether and to what extent this Court's jurisdiction is divested by a Notice of Appeal—nor whether the Supreme Court's holding in *Griggs* can ever be altered by a purported waiver through "litigation conduct."

Accordingly, none of Petitioners' arguments support their request to proceed with briefing the non-jurisdictional issues in the present case.

## II. Conclusion

As a consequence of the precedents summarized above, therefore, the question of how this litigation should proceed is necessarily premature while Respondent considers whether to pursue an interlocutory appeal.

The appropriate course would be for the parties to revisit the issues, if necessary, after the status of Respondent's potential interlocutory appeal is known. Moreover, given the intervening holiday period and the significant complexity of this case, a modest extension would be appropriate to enable the parties to negotiate any remaining issues—*i.e.*, in good faith and with appropriate notice as to the parties' respective legal positions.

Accordingly, Respondent hereby respectfully requests this Court to extend the deadline for submission of a proposed briefing schedule until **January 18, 2024**. This deadline would be vacated by operation of law if Respondent files a timely Notice of Appeal regarding the issues arising under the FSIA. A Proposed Order is submitted together with this Proposal.

Dated:  December 5, 2023

   /s/  *Carolyn B. Lamm*
Carolyn B. Lamm (D.C. Bar No. 221325)
David Riesenberg (D.C. Bar 1033269)
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com
david.riesenberg@whitecase.com

*Counsel for Respondent*