**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HULLEY ENTERPRISES LTD., ET AL.,

                   *Plaintiff*,

    v.

RUSSIAN FEDERATION

                   *Defendant*.

1:14-cv-1996

Hon. Beryl A. Howell

**Government's Statement of Interest**
**on Questions of Issue Preclusion as to**
**Jurisdictional Questions under the Foreign Sovereign Immunities Act**

The United States files this statement in response to the Court's minute order dated

January 8, 2026 inviting the government's views on the following questions related to the Foreign

Sovereign Immunities Act ("FSIA"):

(1) "whether issue preclusion applies to jurisdictional questions under the FSIA," 28 U.S.C. § 1605(a)(6), which issue the D.C. Circuit "has not previously addressed," though the Circuit has established that "in general, '[i]ssue preclusion applies to threshold jurisdictional issues'" in other contexts, *Hulley*, 149 F.4th at 691 (quoting *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34 (D.C. Cir. 2015) (applying issue preclusion to decision on standing)); and

(2) if issue preclusion applies to jurisdictional questions under the FSIA,
(a) "whether [issue] preclusion [regarding 'jurisdictional questions under the FSIA'] extends to *foreign*" courts' decisions "of fact or law," which the D.C. Circuit emphasized is also a "novel question," *id.* (emphasis in original);

(b) whether issue-preclusive effect applies to all foreign decisions or is limited to decisions of courts in the "primary jurisdiction," *i.e.*, the "competent authority of the country in which, or under the law of which, th[e] [arbitral] award was made," *see* New York Convention, art. V(1)(e);

(c) whether the factors enumerated in *Hilton v. Guyot*, 159 U.S. 113 (1895), for

1

determining when "recognition of foreign judgments is a matter of international comity," is the appropriate standard for application of issue preclusion to a foreign court's decisions about a foreign state's "entitle[ment] to sovereign immunity" or the "existence of an arbitration agreement," for purposes of application of the "arbitration exception to the FSIA," *Hulley*, 149 F.4th at 691-92; and

(d) "how the *Hilton* factors intersect with the ordinary standard for assessing collateral estoppel," specifically the requirement for application of collateral estoppel that the foreign "proceedings were 'full and fair,'" *id.*

Minute Order (January 8, 2026).

The United States appreciates the Court's invitation to convey its views on these issues. Litigation affecting the jurisdictional immunity of defendant foreign states under the FSIA can involve matters of national import in United States foreign relations and its observation of international law. *See, e.g., Agudas Chasidei Chabad v. Russian Federation*, 110 F.4th 242, 254 (D.C. Cir. 2024) (observing that litigation "'against foreign sovereigns in our courts raise[s] sensitive issues concerning the foreign relations of the United States' … and can have serious 'diplomatic implications'" for the United States (quoting *Verlinden V.B. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983)). As a party to the New York Convention, the United States maintains a significant interest in the recognition and enforcement of foreign arbitration awards and recognizes the importance of the international system of commercial arbitration to the workings of the global economy and transnational flows of goods and investment. The ratification of the New York Convention and enactment of the necessary implementing legislation by the United States reflects its interest in the recognition and enforcement of foreign arbitration agreements in United States courts. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1975) ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts.") (quotation marks omitted).

2

Harmonizing these two goals—carefully calibrating the circumstances under which foreign states are subject to the jurisdiction of United States and facilitating the enforcement in U.S. courts of international arbitral awards against foreign states in accord with the New York Convention—requires striking a careful balance.

**<u>DISCUSSION</u>**

**Question 1:**  The United States takes the position that issue preclusion may apply to jurisdictional questions under the FSIA where, for example, the findings of U.S. courts satisfy the normal requirements for issue preclusion.  This position is consistent with caselaw applying the FSIA arbitration exception by federal courts in the D.C. Circuit and elsewhere.

Foreign sovereign immunity initially "developed as a matter of common law[.]" *Samantar v. Yusuf*, 560 U.S. 305, 311 (2010).  In 1976, Congress enacted the FSIA, 28 U.S.C. §§ 1330, *et. seq.*, which establishes an exclusive statutory framework to determine whether a foreign sovereign state is immune from the jurisdiction of U.S. courts.  The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  "Under the Act, a foreign state is presumptively immune," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  Thus, "[a]t the threshold of every action" against a foreign state, a district court "must satisfy itself that one of the exceptions applies."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983).

The arbitration exception applies in any case brought "to confirm an award" made pursuant to an "agreement to arbitrate" "made by the foreign state with or for the benefit of a private party" if the award "is or may be governed by a treaty or other international agreement in

3

force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). Thus, "the existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021).

While the court assessing an FSIA action must satisfy itself that these jurisdictional prerequisites apply, the D.C. Circuit itself has observed that courts may be so satisfied through giving issue-preclusive effect to the jurisdictionally relevant findings of fellow U.S. courts. *Hulley*, 149 F.4th at 691. *See*, *e.g.*, *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 765-67 (9th Cir. 2007) (giving preclusive effect to a previous state court decision that the court lacked subject matter jurisdiction under the FSIA); *Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1, 4-5 (D.D.C. 2005) (holding that collateral estoppel "preclude[d] re-litigation of the issue[]" of whether certain foreign organizations "[met] the definition of 'foreign state' under the [FSIA]," and were therefore immune from suit, because the issue had been "fully and carefully examined" by two other domestic courts); *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, No. 10-cv-11551-RWZ, 2012 WL 1067648, at *10-11 (D. Mass. Mar. 28, 2012) (giving preclusive effect to the Second Circuit's decision that the dispute did not fall within the commercial exception to the FSIA); *Samco Glob. Arms, Inc. v. Republic of Honduras*, No. 10-20196-CIV, 2012 WL 13008165, at *5 (S.D. Fla. Jan. 25, 2012), *aff'd*, 511 F. App'x 828, at *1 (11th Cir. Feb. 27, 2013) (affirmed "for the reasons stated in the district court's well-reasoned order and opinion," which held that issue preclusion "bars re-litigation of the issue of FSIA immunity in this case" because the "identical issue" was raised in a separate case "and litigated through appeal."); *Preble-Rish Haiti, S.A. v. Republic of Haiti*, Nos. 22-cv-7503 (PKC) & 21-cv-6704 (PKC), 2023 WL 4267215, at *9 (S.D.N.Y. June 29, 2023) (applying issue preclusion to prohibit relitigation of

4

whether Haiti had a "valid arbitration agreement" with the arbitral-award creditor because the question had been litigated in state court, and so Haiti "is not entitled to FSIA immunity").

Consistent with established caselaw, therefore, courts have the discretion to apply issue preclusion to jurisdictional questions under the FSIA where, for example, the findings of U.S. courts satisfy the normal requirements for issue preclusion.

**Question 2(a):**  The United States takes the position that, while *foreign* courts' determinations are not binding on jurisdictional questions, there is no categorical bar to U.S. courts extending issue preclusion, where appropriate, to the determinations of fact or law by foreign courts as they bear on U.S. courts' own FSIA jurisdictional inquiries.

As the D.C. Circuit remarked, "[w]e are aware of no case … in which a court has given preclusive effect to a foreign judgment in order to exercise jurisdiction over a foreign sovereign under the FSIA." *Hulley*, 149 F.4th at 691.  But the court of appeals immediately noted that "United States courts have long accorded respect to, and often enforced, judgments of foreign courts." *Id*.  Further, the court observed, "[s]ince *Hilton*, the federal courts have extended comity to foreign *judgments* that comport with the standard expounded by the [Supreme] Court [in that case]." *Id*. at 692 (emphasis added).  Examples include *Tahan v. Hodgson*, 662 F.2d 862, 864-68 (D.C. Cir. 1981) (applying the *Hilton* factors and concluding that enforcement of an Israeli judgment was required); *Donnelly v. FAA*, 411 F.3d 267, 270-71 (D.C. Cir. 2005) (upholding, as consistent with *Hilton*, a federal agency's use of a foreign criminal conviction as evidence in an adjudication, stating that "principles of comity suggest that [a foreign] judgment should be given weight as *prima facie* evidence of the facts underlying it")*; see also Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 361 (10th Cir.1996) (applying *Hilton* and collateral estoppel to conclude

that Australian judgment resolved factual issues against plaintiff and barred the claim); *Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 473 (D.N.J. 2001) (determining that a United Kingdom judgment was "conclusive as to the issues tried upon the merits therein" because it satisfied the requirements of collateral estoppel and *Hilton*); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1332 (S.D.N.Y. 1997) (giving preclusive effect to French convictions on securities fraud and conspiracy claims as they satisfied *Hilton* and collateral estoppel analyses).

The FSIA's animating principle is that the determination, by *United States* courts, of the claims of foreign states to immunity serves the interests of justice and protects the rights of foreign states and domestic litigants. 28 U.S.C. § 1602. Nothing in the statute explicitly requires a court to determine all jurisdictional facts *de novo* without the discretion to draw upon or inform its determination with foreign courts' judgments. *See, e.g., Hulley*, 149 F.4th at 690 (citing to *Stileks,* 985 F.3d at 878) (U.S. courts conducting an FSIA jurisdictional inquiry may not defer to an *arbitral tribunal's* determinations as to the *existence* of an arbitration agreement, though they may defer to the tribunal's assessment of the arbitration agreement's *scope*). The D.C. Circuit has never held that courts may not reference or incorporate other courts' findings in reaching their own jurisdictional determinations, whether under the FSIA or otherwise, provided the U.S. court itself makes the ultimate determination. *See Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 205 & n.3 (D.C. Cir. 2015) (explaining that that "[t]he jurisdictional task before the District Court was to determine whether" the parties had "an agreement to arbitrate," and that its failure to "mak[e] this determination as part of its jurisdictional analysis . . . was error" while expressly declining to hold that the FSIA requires a purely *de novo* inquiry into and determination of arbitrability.) As an overall matter, the D.C. Circuit has held that district courts have "considerable latitude in devising the procedures" necessary to rule on sovereign immunity.

6

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131 (D.C. Cir. 2004) (affirming the denial of sovereign immunity under the FSIA based on a declaration from a retired ambassador stating that Libya's agent killed Kilburn, without requiring depositions or any other procedures).

Therefore, while foreign courts' determinations are not binding on jurisdictional questions, there is no categorical bar to U.S. courts exercising their discretion and extending issue preclusion, where appropriate, to the determinations of fact or law by foreign courts as they bear on U.S. courts' own FSIA jurisdictional inquiries.


**Question 2(b):**  The United States takes the position that an issue preclusion analysis concerning the facts and/or law relevant to the FSIA's arbitration exception applies with equal force to conclusions of "primary jurisdiction" courts under the New York Convention as it would to any other foreign court judgments.

The United States is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 7, 1959, 21 U.S.T. 2517, commonly known as the New York Convention.  Under the New York Convention, a competent court in the sovereign state of the place of arbitration or whose laws were designated as the governing law of the arbitration agreement is considered to have particular authority to suspend or set-aside those arbitral awards.[1] New York Convention, art. V(1)(e) ("Recognition and enforcement of the award may be refused,

---

[1] As a matter of nomenclature, the court in which the arbitral tribunal sat or whose law governed the arbitration is commonly referred to as the court of "primary jurisdiction," while the court in which enforcement of the foreign arbitral award is sought is commonly referred to as the court of "secondary jurisdiction." Neither of those terms appears in the Convention.  Here, the U.S. District Court is a court of "secondary jurisdiction," asked to confirm and enforce the arbitral awards that the courts of "primary jurisdiction"—the Netherlands in *Hulley* and France in *Bank of Ukraine*—have upheld.

at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that … [t]he award … has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.").  U.S. courts do not regard a primary jurisdiction's courts' confirmation, suspension, or set aside of arbitral awards as automatically binding.  *See, e.g.*, *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 453 (10th Cir. 2023).  Rather, the "Convention encourages 'recognition and enforcement' of foreign arbitral awards."  *Id.* (quoting the New York Convention, art. III).  But "'recognition and enforcement of the award may be refused' if (1) the award 'has been set aside' by the primary jurisdiction … or (2) '[t]he recognition or enforcement of the award would be contrary to the public policy' of the secondary jurisdiction."  *Id.* (quoting the New York Convention, arts. V(1)(e) & V(2)(b)).

Consequently, U.S. courts have recognized that, though the New York Convention favors recognition and enforcement of arbitral awards, "secondary jurisdiction" courts asked to enforce arbitral rulings may decline to do so if it would be fundamentally unjust.  "[We] [a]ccept[] that there is a narrow public policy gloss on Article V(1)(e) of the Convention and that a foreign judgment is unenforceable as against public policy to the extent that it is repugnant to fundamental notions of what is decent and just in the United States…."  *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 939 (D.C. Cir. 2007) (citation omitted).  At the same time, courts should not "routinely second-guess" a primary jurisdiction court's decision confirming or setting aside an arbitral award where "[a]ppellants have neither alleged nor provided any evidence to suggest that the parties' proceedings before [the foreign primary jurisdiction court] or the judgment of that court violated any basic notions of justice to which we subscribe."  *Id*. at 937,

8

939.  U.S. courts, in such circumstances, apply the *Hilton* factors, to assess whether recognizing the determinations of law or fact by foreign courts, encompass precisely these questions:  whether the process, procedures, and system of law applied by the foreign court is consistent with fundamental notions of justice and fairness, or if those determinations were instead marred by fraud, lack of opportunity to participate in the proceedings, clear partiality or denial of due process.  For this reason, a searching comity analysis standard would suffice as that "narrow public policy gloss" that courts may utilize, even under the New York Convention, when considering whether to recognize a primary jurisdiction court's determinations confirming, suspending, or setting aside an arbitral award.

Similarly, the FSIA arbitration exception also makes no mention of the effects of, or special prerogatives for, courts wielding authority under the New York Convention's article V(1)(e).  The jurisdictional analysis of a U.S. court assessing the applicability of the arbitration exception to the FSIA, § 1605(a)(6), in proceedings to confirm and enforce an arbitral award, is distinct from the procedure to confirm and enforce an arbitral award under the New York Convention's Article V.  In fact, the D.C. Circuit has stated that even a primary jurisdiction court's decision to set-aside an award is not determinative as to whether the U.S. court still had jurisdiction under the FSIA and the arbitration exception, but instead merely went to the merits of the claim, which is not a jurisdictional consideration.  *Process and Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022) (upholding the district court's assertion of jurisdiction under the FSIA arbitration exception because "the district court need not determine the validity of the arbitral award as part of its jurisdictional inquiry.").  The Circuit issued this holding even though it acknowledged that Congress intended to incorporate international arbitration treaties' provisions into the FSIA's arbitration exception: "We have recognized that the

New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." *Id.* (quoting *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999)).

For these reasons, the United States takes the position that analyzing issue preclusion to assess if the FSIA arbitration exception applies extends equally to the conclusions of both "primary jurisdiction" courts under the New York Convention and other foreign courts.  In both cases, the application of issue preclusion would be subject to the appropriate analyses for recognition of foreign judgments under comity and issue-preclusive effect under collateral estoppel as discussed below.

**Question 2(c):**  The United States takes the position that a "heightened *Hilton* analysis" test be the standard for assessing whether to extend comity to foreign determinations of fact or law relevant to jurisdictional questions under the FSIA arbitration exception.

The seminal case determining when U.S. courts will recognize the judgments of foreign courts is *Hilton v. Guyot*, 159 U.S. 113 (1895).  The so-called "*Hilton* factors" remain the touchstone in determining when such recognition is appropriate in a particular case.  *Hilton* provides that a foreign judgment will only be recognized if:

> [T]here has been *opportunity for a full and fair trial* abroad before a court of *competent jurisdiction*, *conducting the trial upon regular proceedings*, after *due citation or voluntary appearance* of the defendant, and *under a system of jurisprudence likely to secure an impartial administration of justice* between the citizens of its own country and those of other countries, and *there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment,* or *any other special reason* why the comity of this nation should not allow it[s] full effect ….

159 U.S at 202-03 (emphases added).

10

U.S. courts must apply these factors searchingly in a case-specific inquiry before deciding whether to extend comity to a foreign determination of fact or law.  To ensure that the arbitration exception to sovereign immunity under the FSIA is satisfied, a U.S. court must apply this searching inquiry with stringency to address its own jurisdiction over a foreign sovereign.  *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 173 (2021) (stating that foreign-state defendants are "presumptively immune from the jurisdiction of United States courts[,]" other than for enumerated "exceptions").  For this reason, the United States takes the position that, when a U.S. court weighs whether to exercise its discretion to recognize a foreign judgment for purposes of findings of jurisdictional fact relevant to the FSIA's arbitration exception, a "heightened *Hilton* analysis" governs the court's jurisdictional inquiry.  As such, a U.S. court should scrutinize not merely the outcome of the foreign proceedings but should also assess the foreign court's evidentiary record (*e.g.*, expert testimony, transcripts, documents) against the foreign court's conclusions, thereby evaluating the foreign court's reasoned persuasive power.  This approach ensures that the foreign proceedings robustly satisfy the *Hilton* standard with an evidentiary heft appropriate to jurisdictional matters under the FSIA's arbitration exception.

A heightened *Hilton* analysis is also consistent with caselaw expressly stating that a comity analysis is discretionary and entrusted to the judgment of the court.  As the Supreme Court observed in *Hilton*, comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."  159 U.S. at 163-64.  Granting comity to foreign judgments—including for the purpose of issue preclusion—is neither required nor automatic.  Rather, *Hilton* requires "a case-specific inquiry" into whether any special circumstances of the relevant litigation weigh against granting comity to the foreign judgment.  *Diorinou v. Mezitis*, 237 F.3d 133, 143 (2d Cir. 2001).  Likewise, as courts have consistently held, an appeal to comity

11

must be rejected wherever it would be "contrary to the policies or prejudicial to the interests of the United States." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 106 (2d Cir. 2016). Consequently, in any FSIA jurisdictional analysis applying *Hilton*, a court should consider "any other special reason" cautioning against a comity determination and the range of grounds that might make such a comity determination inappropriate. Indeed, "courts … applying *Hilton* require adjudication of the propriety of a foreign judicial decision…." *Doe v. Exxon Mobil Corp.,* 654 F.3d 11, 64 (D.C. Cir. 2011) (declining to overrule a district court's finding in favor of plaintiffs that their attempts to participate in proceedings before the foreign court would lead to reprisals, potentially including their deaths, despite affidavit from foreign court justice that the claims could be fully litigated there.) A heightened *Hilton* analysis requires a court to consider whether there is any reason in the evidentiary record to conclude that extending comity to the foreign determination would be contrary to fundamental notions of fairness. *See, e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1014 (9th Cir. 2009) (concluding "we may properly decline to extend comity to the Greek court's determination if it clearly misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness"). A heightened *Hilton* analysis appropriately complements, and extends beyond, the more narrowly construed due process concerns at the heart of the *Hilton* factors: "We agree that, in the context of [this dispute], a court's decision to extend comity to a foreign judgment may be guided by a more searching inquiry into the propriety of the foreign court's [legal and factual determinations], in addition to the considerations of due process and fairness outlined specifically in *Hilton." Id*. at 1013.

A heightened *Hilton* analysis addresses the adequacy of the "opportunity for a full and fair trial," and special and case-specific scrutiny of "any other reason" to deny comity, thus affording an adequate safeguard to U.S. public policy and interests. *Hilton*, 159 U.S. at 202; *see also Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) (federal courts applying *Hilton* will generally recognize foreign country judgments where "the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.")  Such an analysis is a reasonable balance between ensuring that U.S. courts retain final say over whether jurisdiction exists under the FSIA arbitration exception, while also facilitating a resolution of international commercial disputes as specified in the New York Convention and Federal Arbitration Act.

As a result, the United States takes the position that a "heightened *Hilton* analysis" test should be the standard for assessing whether to extend comity to foreign determinations of fact or law relevant to jurisdictional questions under the FSIA's arbitration exception.


**Question 2(d):**  The United States takes the position that the heightened *Hilton* analysis must precede the issue-preclusion analysis.  The issue preclusion analysis, a separate "full and fair" assessment of the foreign proceedings, must include examination of the case-specific factual record before the foreign court as it relates to the reasoned persuasiveness of the determinations specific to the challenged issues.

Whether and how to apply the *Hilton* factors is separate from the inquiry into whether issue preclusion applies to a given factual or legal question that has been resolved by a foreign court.  Moreover, courts considering the preclusive effect of a foreign court's determinations must conduct these two separate inquiries sequentially.  In other words, a court first must apply a *Hilton*

13

analysis to establish whether it should recognize, as a matter of comity, the foreign court's determinations of fact or law relevant to FISA jurisdiction. If a court agrees that such determinations should be recognized, it should then proceed to separately analyze whether issue preclusion applies to the foreign court's determinations. Both inquiries address whether the foreign proceedings were "full and fair." "The standards for issue preclusion and recognition of a foreign judgment share the same underlying principles and concerns. . . . The ultimate inquiry . . .is . . . whether [the party] . . . was provided with a fair and impartial trial . . . and whether this court is satisfied that these foreign proceedings were sufficiently free from prejudice to warrant their preclusive effect here." *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 34-35 (D.D.C. 2007); *see also id.* at 36 (conducting detailed sequential separate *Hilton* factors comity analysis and then collateral estoppel analysis and concluding that "[n]one of the issues raised … suggest that the [foreign court's] process was unfair, or that it would be unjust to use the result against [the party] here.")

The second inquiry into collateral estoppel may be more searching and detailed than the initial *Hilton* factors analysis. A court should assess whether the foreign court thoroughly and fairly adjudicated the dispute about those identified issues. This is distinct from a court satisfying itself, under *Hilton*, as to the more general question about the overall fairness and fullness of the foreign court's proceedings. The *Hilton* comity analysis does not require the court to focus specifically on the foreign court's adjudication of the particular issue at the heart of the current matter. *See, e.g., Id.* (acknowledging some inconsistencies in the evidence at trial, but observing that the foreign court findings on the central issue, made by a unanimous three-judge panel, were upheld upon appellate review, and the party "was given a full and fair trial in which he litigated *the central fact sought to be used against him here* …." (emphasis added)). In sum, as courts that

14

have undertaken a *Hilton* analysis and then a separate issue-preclusion analysis have explained, "[t]o resolve the . . . defendants' motion, the Court must determine (1) whether the [foreign] judgment is entitled to recognition by this Court; and (2) if so, the extent to which the Court should accord preclusive effect to the [foreign] judgment under the principles of issue preclusion." *Alfadda*, 966 F. Supp. at 1326 (explaining that "[o]f course, recognition of the [foreign] judgment does not of itself mean that the Court will accord it preclusive effect in this case, which necessarily requires a close analysis of the law and the facts.")

For collateral estoppel to apply, "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." *Id*. at 1330 (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). In addition, courts find that collateral estoppel applies only where "preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Amer. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992)). The U.S. court should careful analyze the evidentiary record of the foreign proceedings to determine how "full and fair" they were. This inquiry is likely more focused and issue-specific than the more general inquiry during the prior "heightened *Hilton* factors" analysis *Diorinou*, 237 F.3d at 143-46 ("in order to determine how much deference [to provide to a foreign court's determination, even though the foreign judicial system satisfied the basic *Hilton* factors for fairness], we deem it appropriate to give some consideration to the subsidiary determinations that underlie the holding."); *see also*, *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 666 (S.D.N.Y. 1996) (recognizing prior

breach of contract decision of Saudi Arabian court after comity analysis but denying preclusion because of differing standards of proof for the specific issue in question).

This more focused, specific, and evidence-driven collateral estoppel inquiry (supplemented by the requirement to show that, in the totality of circumstances, such issue preclusion also would not work a basic unfairness to the person bound by the earlier decision) is therefore an additional safeguard against U.S. courts' overreliance on foreign courts' determinations of jurisdictional threshold issues.  The approach also allows U.S. courts to draw upon the expertise of foreign courts' efforts to resolve questions of fact and law relevant to U.S. courts' own jurisdictional inquiries under the FSIA's arbitration exception.  In addition, because foreign jurisdictions sometimes condition the availability of sovereign immunity based on reciprocity, the United States has a reciprocal interest in being able to challenge findings by foreign courts in subsequent arbitral award confirmation and enforcement proceedings against the United States in other jurisdictions.

Dated:  May 8, 2026

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director

*/s/ --P. R. Goldstone*
PETER R. GOLDSTONE (Mass. Bar No. 682050)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.:  (202) 598-0912
Email:  Peter.R.Goldstone@usdoj.gov
**Counsel for the United States**