**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HULLEY ENTERPRISES LTD., *et al.*,<br><br>Petitioners,<br><br>v.<br><br>THE RUSSIAN FEDERATION,<br><br>Respondent. | Civil Action No. 14-1996 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**

Parties in this long-running action to confirm arbitral awards of over $50,000,000,000 against respondent, the Russian Federation, have been litigating the threshold issue of subject matter jurisdiction for over ten years. *See* Resp't's Mot. Dismiss for Lack of Jurisdiction, ECF No. 24. For much of that time, however, the case had been stayed pending resolution of set-aside proceedings in the Dutch courts, *see Hulley Enters. Ltd. v. Russian Fed'n* ("*Hulley III*"), No. 14-cv-1996 (BAH), 2022 WL 1102200, at *3 (D.D.C. Apr. 13, 2022) (recounting the history of the prior stay requests), and the longest portion of that stay, from September 2016 to May 2020, was entered at the request of petitioners Hulley Enterprises, Ltd., Yukos Universal Ltd., and Veteran Petroleum Ltd. (collectively, the "Shareholders"), *id.* The parties have now briefed the propriety of entering a far shorter stay pending a decision from the D.C. Circuit in *Yukos Capital Ltd. v. Russian Federation* ("*Yukos*"), No. 25-7097, a case raising the same legal questions that must be resolved in respondent's jurisdictional challenge. Upon consideration of the parties' responses to the Court's order to show cause why a stay should not be imposed, *see* Min. Order (Oct. 5, 2026); Shareholders' Resp. to Order to Show Cause, ECF No. 328 ("Shareholders' Resp."), Respondent's Resp. to Order of the Court, ECF No. 330 (Resp't's Resp.), Shareholders' Reply Regarding the Order to Show Cause, ECF No. 332 ("Shareholders' Reply"), and balancing the

alleged hardship to Shareholders against the benefits of judicial economy, this case is stayed until May 6, 2027, or until the D.C. Circuit issues its decision in *Yukos*, whichever date occurs earlier. Also pending are related motions to expedite the proceedings, *see* Shareholders' Mot. to Expedite, ECF No. 324, and to require respondent to post security, *see* Shareholders' Mot. for Posting of Security, ECF No. 328, which are denied for the reasons explained below.

## I. BACKGROUND

The history of this litigation to confirm Shareholders' $50,000,000,000 arbitration awards against respondent is described at length in this Court's prior decisions resolving requests to stay proceedings and to address respondent's jurisdictional challenge, *see Hulley Enters. Ltd. v. Russian Fed'n* ("*Hulley I*"), 211 F. Supp. 3d 269, 272-76 (D.D.C. 2016); *Hulley Enters. Ltd. v. Russian Fed'n* ("*Hulley II*"), 502 F. Supp. 3d 144, 148-51 (D.D.C. 2020); *Hulley III*, 2022 WL 1102200, at *2-4; *Hulley Enters. Ltd. v. Russian Fed'n* ("*Hulley IV*"), No. 14-cv-1996 (BAH), 2023 WL 8005099, at *3-8 (D.D.C. Nov. 17, 2023), *vacated and remanded*, 149 F.4th 682 (D.C. Cir. 2025), and that background is incorporated by reference here. To summarize, in November 2004, Shareholders initiated arbitration proceedings regarding allegations that respondent violated the Energy Charter Treaty ("ECT"), to which respondent was a signatory, by engaging in "a series of adverse measures intended to 'bankrupt Yukos [Oil Company], appropriate the company's assets, and silence the company's head.'" *Hulley III*, 2022 WL 1102200, at *2 (citation omitted). Following a decade-long arbitration process and amid proceedings, initiated by respondent, to set aside the arbitration awards in Dutch courts, Shareholders filed the instant lawsuit, in November 2014, to confirm and enforce the awards. *See id.* Respondent filed simultaneous motions in October 2015 to dismiss this action for lack of subject matter jurisdiction and to deny confirmation of the awards on the merits. *See* Resp't's Mot. Dismiss for Lack of Jurisdiction; Resp't's Mot. to

Deny Confirmation of Arbitration Awards Pursuant to the N.Y. Convention, ECF No. 23. Before resolving those motions, however, "this case was stayed for six years, until November 2021, at the request of both or only one of the parties, depending on which party prevailed in the most recent decision by a Dutch appellate court." *Hulley IV*, 2023 WL 8005099 at *2.

When the most recent stay was lifted, the parties submitted supplemental briefing in support or opposition to respondent's motion to dismiss for lack of subject matter jurisdiction, which motion asserted foreign sovereign immunity not exempted under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and inapplicability of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention") to support the exercise of jurisdiction. *See id.* at *1, 8. Respondent's motion to dismiss was denied in November 2023, because the Court determined that the FSIA's arbitration exception, *see* 28 U.S.C. § 1605(a)(6), applied and that the awards satisfied the prerequisites for the exercise of jurisdiction under the New York Convention. *Id.* at *12, 28. Specifically, respondent failed to "persuasively rebut[] the record evidence" demonstrating satisfaction of "the first prerequisite to meet the FSIA's arbitration exception—*i.e.*, establishing 'the existence of an arbitration agreement.'" *Id.* at *12 (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021)). In making that determination, the Court expressed that, because the parties "chose to delegate questions related to jurisdiction under the ECT to the [arbitral] [t]ribunal," that "[t]ribunal's determination that an arbitration agreement existed here is binding on this Court" and "[*d*]*e novo* review is unnecessary." *Id.* at *12, 17.

Respondent appealed the rejection of its claim of foreign sovereign immunity, pursuant to the collateral order doctrine, and, in August 2025, the D.C. Circuit vacated and remanded the matter. *See Hulley Enters. Ltd. v. Russian Fed'n*, 149 F.4th 682, 687, 692 (D.C. Cir. 2025). The

D.C. Circuit clarified that "when parties delegate questions of *arbitrability* to an arbitral tribunal, this court is bound by the tribunal's determinations," but that questions about "the existence or validity of an arbitration agreement . . . go[] to the applicability of an exception to sovereign immunity and therefore [are] jurisdictional." *Id.* at 688 (emphasis added). Such jurisdictional inquiries, including respondent's assertion that "an arbitration agreement between [respondent] and the Shareholders" did not exist because respondent did not "ma[ke] a standing offer to arbitrate through provisional application of the [ECT]," must be assessed "de novo, without deferring to the [t]ribunal's conclusions about Russian law." *Id.* at 689-90. Since that *de novo* analysis had not been conducted, the case was remanded to "decide whether provisional application of the [ECT's] arbitration clause is consistent with Russian law." *Id.* at 690.

The D.C. Circuit also tasked this Court with addressing "in the first instance" Shareholders' argument that "because the Dutch courts determined that [respondent] had agreed to arbitrate this dispute, . . . issue preclusion bars [respondent] from relitigating the existence of an arbitration agreement." *Id.* at 691. This latter task was accompanied by "some guidance" regarding how to answer several "novel" questions related to the applicability of issue preclusion and directed this Court to "invite the United States to express the government's position on this issue." *Id.* at 691-92 (citation omitted). Upon remand and in response to this Court's queries, the United States expressed its position on the issue preclusion issue, *see* United States' Amicus Brief, ECF No. 303, and the parties submitted supplemental briefs regarding jurisdiction and issue preclusion, the latest of which was filed on August 11, 2026, *see* Respondent's Suppl. Reply in Supp. of Mot. to Dismiss, ECF No. 322.

Meanwhile, just a couple of weeks before issuing its decision in this case, the D.C. Circuit received a notice of appeal in *Yukos*, another case in which respondent appealed a district court's

denial of its motion to dismiss on grounds of foreign sovereign immunity. *See* Notice of Appeal at 16, *Yukos*, No. 25-7097, ECF No. 2125260 (D.C. Cir. July 14, 2025). As in this case, *Yukos* involves confirmation of arbitration awards based on alleged violations of the ECT and respondent had argued in the district court, as here, that there was no arbitration agreement, as required to proceed under the FSIA's arbitration exception, *see* 28 U.S.C. § 1605(a)(6), because it did not "ratify the ECT" and because "numerous conflicts between Russian law and the arbitration at issue" precluded provisional application of the ECT. *Yukos Cap. Ltd. v. Russian Fed'n*, 792 F. Supp. 3d 83, 86, 89 (D.D.C. 2025). Unlike in this case, however, the district court did not deem itself bound by an arbitral tribunal's prior determinations, noting that "whether a valid arbitration agreement exists is a question for courts, not arbitrators, to resolve," *id.* (internal quotation marks and citation omitted), and considered the jurisdictional challenge *de novo*, as the D.C. Circuit subsequently announced was the proper approach, *see Hulley*, 149 F.4th at 690. The district court in *Yukos* rejected respondent's only argument "plausibly go[ing] to existence rather than scope" of an arbitration agreement—*i.e.*, that "Russian Law generally prohibits arbitration of 'public law' disputes"—because the law respondent cited for that premise "only suggests that arbitrability depends on Russian federal law" and does not "state when that law bars arbitration" or "demonstrate that Russia didn't enter an agreement to arbitrate *some* disputes." *Yukos*, 792 F. Supp. 3d at 90 (citation omitted). Instead, the evidence reflected that "provisional application [of the ECT] is, itself, a component of Russian law." *Id.*

On appeal, the parties submitted briefs that noted the similarities between *Yukos* and *Hulley*, *see* Appellant's Brief at 1-2, *Yukos*, No. 25-7097, ECF No. 2144986 (D.C. Cir. Nov. 12, 2025) (noting that "whether Russia consented to arbitration under the ECT turns on a single issue" raised in both cases); Appellee's Brief at 15, *Yukos*, No. 25-7097, ECF No. 2152732 (D.C. Cir.

Jan. 2, 2026) (explaining that the D.C. Circuit in *Hulley* "remanded for the district court to 'decide'—as this district court already did here—'whether provisional application of the [ECT's] arbitration clause is consistent with Russian law'" (quoting *Hulley*, 149 F.4th at 690)), and Shareholders in this matter were granted leave to submit an amicus brief expressing their views on the overlapping issues, *see* Brief of Amici Curiae Hulley Enters. Ltd., et al. in Supp. of Yukos Capital & in Favor of Affirmance at 1-2, *Yukos*, No. 25-7097, ECF No. 2153579 (D.C. Cir. Jan. 9, 2026) (explaining that the D.C. Circuit remanded *Hulley* "for further proceedings relating to the same question that is presented in the [*Yukos*] appeal" and providing additional context to the D.C. Circuit "regarding the Dutch courts' analysis of the question presented in [the *Yukos*] appeal"). The D.C. Circuit then held oral argument on May 15, 2026, during which respondent's primary argument was that *Yukos*, like this case, should be remanded to the district court for an issue preclusion analysis. *See* Oral Argument at 04:55-05:28, *Yukos*, No. 25-7097 (D.C. Cir. May 15, 2026), https://media.cadc.uscourts.gov/recordings/docs/2026/05/25-7097.mp3.

Notwithstanding that request for remand, the D.C. Circuit subsequently ordered the United States to address, as amicus, the underlying jurisdictional question—*i.e.*, "whether, under Article 45(1) of the Energy Charter Treaty, provisional application of the Treaty is inconsistent with Russia's constitution, laws, or regulations, particularly in light of the Russian Constitutional Court's 2020 Clarification." Per Curiam Order, *Yukos*, No. 25-7097, ECF No. 2174448 (D.C. Cir. May 21, 2026). In its amicus brief, the United States expressed the same views as are contained in the United States' amicus brief submitted to this Court, plus some "additional points." Shareholders' Notice of Suppl. Authority at 2, ECF No. 320; *see also* United States' Amicus Brief at 7, 11, 13 (opining that no categorical bar exists to U.S. courts extending issue preclusion to determinations of fact or law by foreign courts as they bear on U.S. courts' FSIA jurisdictional

inquiries, that U.S. courts must conduct a searching inquiry into the *Hilton* factors, including an assessment of the evidentiary record before the foreign court, when deciding whether to recognize those determinations as a matter of international comity, and that the *Hilton* analysis should precede the issue preclusion analysis); Brief for United States as Amicus Curiae at 10, 20-21, *Yukos*, No. 25-7097, ECF No. 2184040 (D.C. Cir. July 20, 2026) (same).

Since the issues before this Court on remand thus mirror, at least in part, those before the D.C. Circuit in *Yukos*, parties were directed to show cause "why, in the interest of judicial economy, this case should not be stayed pending the D.C. Circuit's decision in *Yukos*." Min. Order (Oct. 5, 2026). As expressed in their subsequently filed briefs, Shareholders oppose and respondent favors a brief stay of proceedings. *See* Shareholders' Resp.; Resp't's Resp.; Shareholders' Reply.

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). When exercising this power, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Social Dev. Ltd. v. Gov't of Belize* ("*Belize*"), 668 F.3d 724, 732-33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254-255). "[S]uch determinations" must be made "in . . . light of the particular circumstances of the case." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

## III. DISCUSSION

Shareholders object to a stay pending a decision in *Yukos*, due to the claimed hardship they face, which "increases with each passing year and is . . . compounded by the evolving risk that Russian Federation assets in the United States may be liquidated or otherwise become inaccessible." *Hulley III*, 2022 WL 1102200, at *5. Their concern is that litigants in other award confirmation actions against respondent may obtain final judgment before Shareholders and proceed to seize nonimmune Russian assets in the United States, thereby decreasing the pool of assets available to Shareholders to satisfy their arbitral awards. *See* Shareholders' Resp. at 9-10 (describing five other award-confirmation actions against respondent). As support, Shareholders repeatedly assert, without any accompanying citations or evidence, that "Russia does not have anywhere close to $68 billion of nonimmune assets in this country," *id.* at 11; *see also id.* at 2; Shareholders' Reply at 7, which amount is the judgment sought in this matter alone. Yet Shareholders also suggest that, even if they prevailed and obtained that judgment *today*, they would not be able to satisfy that judgment in the United States or directly from respondent. *See* Shareholders' Resp. at 10-11 (noting that "this Court's writ runs only to assets that are found in the United States" and respondent "has made abundantly clear that it will never pay Shareholders"). As a result, Shareholders would have to turn their efforts for payment to multiple other countries, as they have already done by bringing confirmation, attachment, and enforcement proceedings in Belgium, France, Germany, India, and the United Kingdom, *see Hulley II*, 502 F. Supp. 3d at 148-49, and thus might still face the same hardship in scouring the world for nonimmune Russian assets to enforce their judgment that they fear will occur if a stay is imposed. Put another way, Shareholders face the same hardship, with or without a stay.

When that claimed hardship to Shareholders is weighed against the significant benefits to judicial economy, those "competing interests" counsel in favor of a brief stay. *Belize*, 688 F.3d at 732 (citation omitted). Unlike the prior stays in this matter, which were granted for years at a time, *see* Order (Nov. 20, 2020), ECF No. 193; Order (Sept. 30, 2016), ECF No. 153, the instant stay is likely to terminate in a few months, *see* Resp't's Resp. at 4-5 (citing statistics regarding the D.C. Circuit's average timeline for issuing opinions), or by May 6, 2027. Thus, far from "a stay of indefinite duration in the absence of a pressing need," *Landis*, 299 U.S. at 255, this stay is definite in scope—terminating upon issuance of the D.C. Circuit's opinion in *Yukos* or within six months, whichever is earlier—and "provi[des] for status updates or further review" to address any changes in circumstances, *Belize*, 688 F.3d at 732; *see also* Min. Order, *Perlmutter v. Blanche*, No. 25-cv-01659 (TJK) (D.D.C. Sept. 18, 2026) (imposing a similar *sua sponte* stay for three months without briefing from the parties) (citing *Landis*, 299 U.S. at 254).

Shareholders' argument that the balance should instead tilt in their favor relies heavily on *Landis*, *Belize*, and the D.C. Circuit's decision in *Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971). *See* Shareholders' Resp. at 3-7; Shareholders' Reply at 3-4. Unlike in *Landis* and *Belize*, however, where proceedings were stayed pending non-binding resolution of similar issues in another district court or a foreign court, *see Landis*, 299 U.S. at 250-53; *Belize*, 688 F.3d at 727, the instant stay serves judicial economy by awaiting *binding* authority from the D.C. Circuit, which appears poised to address the legal question at the heart of respondent's jurisdictional challenge—*i.e.*, "whether, under Article 45(1) of the Energy Charter Treaty, provisional application of the Treaty is inconsistent with Russia's constitution, laws, or regulations, particularly in light of the Russian Constitutional Court's 2020 Clarification," Per Curiam Order, *Yukos*, No. 25-7097, ECF No. 2174448 (D.C. Cir. May 21, 2026)—or to provide guidance on the applicability of issue

preclusion in the context of this case, *see* Brief for United States as Amicus Curiae, *Yukos*, No. 25-7097, ECF No. 2184040 (D.C. Cir. July 20, 2026). *Dellinger* is also inapposite as it concerned a stay of a civil matter pending "final termination in the trial and appellate courts, including the United States Supreme Court, of all issues" in a related criminal case, 442 F.2d at 785 (citation omitted), without consideration of the fact that those appeals "may go on for years," *id.* at 786, or the fact that the resolution of the issues in the criminal case "pending in another circuit" "would not be *res judicata*," *id.* at 787. The likelihood that the D.C. Circuit will authoritatively resolve in *Yukos* the complex and novel questions pending before this Court in mere months puts far greater weight on the side of judicial economy than did the potential resolution of similar issues by courts of persuasive authority in *Landis*, *Belize*, and *Dellinger*. As for Shareholders' argument that "any hope for 'judicial economy' is speculative at best" because "[t]here is no guarantee that the D.C. Circuit's opinion in [*Yukos*] will resolve" those legal questions, Shareholders' Resp. at 15, "a stay of the proceedings in one case is justifiable even where the parallel proceedings 'may not settle every question of fact and law,' but would settle some outstanding issues and simplify others," *Bridgeport Hosp. v. Sebelius*, No. 09-cv-1344 (RWR), 2011 WL 862250, at *1 (D.D.C. Mar. 10, 2011) (quoting *Landis*, 299 U.S. at 256).

To be sure, as Shareholders' observe, *see* Shareholders' Resp. at 4, 8, the Supreme Court has cautioned that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," *Landis*, 299 U.S. at 255. Yet, regardless of whether these proceedings are stayed, a decision from the D.C. Circuit in *Yukos* regarding the jurisdictional question or the applicability of issue preclusion will "settle[] the rule of law that will define the rights" of the parties here. *Id.* Thus, by entering a stay, the possibility is avoided that the *Yukos* decision would undercut an analysis of those same

questions in this case and require subsequent motions for reconsideration or, if this case were on appeal, remand for renewed consideration. "These myriad considerations amply demonstrate that issuance of a stay would avoid potentially 'fractured and disorderly' and unnecessary litigation and best preserve judicial and parties' resources." *Hulley I*, 211 F. Supp. 3d at 285 (citation omitted).[1]

Shareholders alternatively request, if a stay is granted, that the Russian Federation be ordered "to post security in the amount of $10.6 billion." Shareholders' Resp. at 17. As previously held in this case, however, "the authority and mechanisms to order the Russian Federation to post security in the vast amount of billions of dollars, faces a significant obstacle when this Court has not resolved threshold jurisdictional issues under the FSIA or New York Convention," and Shareholders' "reliance on the New York Convention provision expressly authorizing a stay with posting of a bond is not applicable here since the Court is relying on its inherent authority to control its docket by issuing [the instant] stay." *Hulley II*, 502 F. Supp. 3d at 164 (citation omitted). Courts "generally have not required foreign sovereigns to post security because they are presumably solvent," and Shareholders' "contention that this presumption should not apply to the Russian Federation because of its alleged failure to pay awards or sanctions in other cases is not so extreme as to warrant disregarding existing precedent." *Id.* (internal quotation marks and citations omitted).

## IV. CONCLUSION AND ORDER

Accordingly, upon consideration of Shareholders' Motion to Expedite, ECF No. 324, Shareholders' Response to Order to Show Cause, ECF No. 328, Respondent's Response to Order

---

[1] Since the case is temporarily stayed and the reasons provided by Shareholders in support of their request to expedite proceedings mirror their reasons for opposing the stay, *see* Shareholders" Mot. to Expedite, Shareholders' motion to expedite is denied as moot.

of the Court, ECF No. 330, Shareholders' Reply Regarding the Order to Show Cause, ECF No. 332, Shareholders' Motion for Posting of Security, ECF No. 329, the legal memoranda in support and opposition to these motions and the exhibits attached thereto, it is hereby—

**ORDERED** that Shareholders' Motion to Expedite, ECF No. 324, is **DENIED AS MOOT**; it is further

**ORDERED** that Shareholders' Motion for Posting of Security, ECF No. 329, is **DENIED**; it is further

**ORDERED** that this matter is **STAYED** until May 6, 2027, or until the D.C. Circuit issues its decision in *Yukos Capital Ltd. v. Russian Federation* ("*Yukos*"), No. 25-7097, whichever date occurs earlier; and it is further

**ORDERED** that parties file, by May 13, 2027, or within five business days of the issuance of a decision in *Yukos*, whichever date occurs earlier, a joint status report advising the Court of the parties' positions on whether the stay should be continued or supplemental briefing is necessary in this case.

**SO ORDERED.**

Date: November 6, 2026

**BERYL A. HOWELL**
United States District Judge